VALLE *et al.*, Appellants, *vs.* CLEMENS *et al.*, Respondents.

1. A husband and wife executed a deed, by which they "*bargained, sold and quit claimed*" to the grantee and his heirs, "all their right, title, interest, estate, claim and demand, as well in possession as in expectancy, of, in and to" a specified tract of land. The wife, at the time, had an interest in the land, upon which the deed might have operated, if it had been properly acknowledged. *Held*, a title subsequently acquired by the husband, by purchase, did not, under the sixth section of the act of 1825, regulating conveyances, enure to the grantee.

2. Neither verbal admissions nor mere presence at a survey can operate as an estoppel *in pais*.

## *Appeal from Perry Circuit Court.*

This was a suit for partition, and the dispute was, as to the extent of the interests of some of the parties. The heirs of C. C. Valle, by virtue of a deed from Robert T. Brown and wife to their father, executed in 1831, claimed an interest of seven hundred arpens, which was also claimed by James Clemens, under Brown. The facts are sufficiently stated in the opinion of the court.

*Scott & Young*, for appellants. 1. The deed from Robert T. Brown and wife to Charles C. Valle, in 1831, for seven hundred arpens, was effectual to pass the title subsequently acquired by Brown. 2. Brown, and Clemens, his privy in estate, are estopped by his acts and declarations. He stood by and assented to the survey made in 1845, and made frequent declarations that the heirs of C. C. Valle were entitled to the quantity they claim. *Taylor & Mason* v. *Zepp*, 14 Mo. Rep. 482.

*Haight & Shepley* for respondents. The case of *Bogy* v. *Shoab* is against the position assumed by the appellants, but this case differs from that. 1. An estate was conveyed by the deed. It is not the case of a man who has no title conveying and afterwards acquiring. This latter case is the only one contemplated by the statute. 2. The grantors had a good

title. The acknowledgment of the wife may not be good to pass her interest, but beyond all doubt she then had the title.

GAMBLE, Judge, delivered the opinion of the court.

The principal question in this case is, whether the title acquired by Robert T. Brown, in the large tract of land described in the petition, after the deed made by him and his wife to Charles C. Valle, enured to the benefit of Valle. Another question is also made upon the effect of certain acts of the parties, which it is alleged operate as an estoppel *in pais*, binding upon Brown and upon Clemens as a privy in estate.

The deed from Brown and wife to Valle is dated April 4, 1831, and by it, they *bargain*, *sell and quit claim* to Valle and his heirs " all their, and each of their right, title, interest, estate, claim and demand, both at law and in equity, as well in possession as in expectancy, of, in and to seven hundred arpens of land, *being part of an undivided Spanish grant, lying on the Saline creek, and known as the Grand Glaise tract.*" At the date of this conveyance, Mrs. Brown, the wife of R. T. Brown, owned an undivided interest in the tract of two undivided sevenths, much exceeding the quantity of seven hundred arpens conveyed to Valle; but Robert T. Brown himself had not then acquired title to any portion of the tract. The deed of Brown and wife to Valle was not so acknowledged as to operate upon any interest which was in Mrs. Brown. Brown afterwards, on the 5th November, 1836, acquired an interest in the tract of one seventh, or something more than one thousand arpens, by conveyance from Nancy Bullitt. The plaintiffs, representatives of Charles C. Valle, claimed that the title thus acquired by Brown enured to the benefit of their father.

After Brown and wife had made their conveyance to Valle, a deed of partition was made among the several owners of the tract, Valle himself not being a party to the deed, and by it a portion, called in the record lot No. 6, was set apart to Brown and his wife for their three shares in the tract. They had be-

come owners of three shares in the following manner : Mrs. Brown in her own right, as heir of her father, the original grantee, had one seventh, and by devise from a deceased sister was entitled to another seventh. Brown had the seventh acquired from Nancy Bullitt. It appears from the deed of partition that Charles C. Valle was one of the heirs of the original grantee, and as such entitled to one seventh of the tract, and that he had sold nine hundred arpens of his share, which had become vested in one of the parties to the deed of partition. The deed further stated, that the quantity in the tract was seven thousand and fifty-six arpens, or one league square, and that Charles C. Valle, as one of the heirs, was entitled to one hundred and eighty arpens, which, with the nine hundred that he had sold and conveyed, would make up his full share of one seventh. If the deed is correctly copied on the record, there is a mistake in the original, as one seventh of seven thousand and fifty-six arpens is one thousand and eight arpens, from which, if the sale made by Valle of nine hundred arpens is deducted, there would remain to him one hundred and eight arpens, and not one hundred and eighty. In the deed of partition, it is stated, that this residue of the share of Charles C. Valle is, by the consent of all parties, to be set apart with the share of Brown and wife.

Evidence was given for the purpose of showing that when the survey was made and the tract subdivided, preparatory to the partition, Brown recognized Charles C. Valle as entitled to an interest in the land, and agreed that the portion to which he was entitled should be included in the portion set apart for Brown and wife. There was also evidence given of a survey made after the partition, for C. C. Valle, at which Brown was present, by which the land claimed under the deed of Brown and wife was surveyed together with the one hundred and eight arpens claimed by Valle as the residue of his share in the original tract.

Clemens purchased the interest of R. T. Brown in the tract set apart for the shares of Brown and his wife. The purchase was

evidenced by a sheriff's deed and by two deeds executed by the administrator of Brown. If C. C. Valle's title was not rendered complete in consequence of the title which was conveyed to Brown after the deed to Valle enuring to the benefit of Valle, or if Brown and those claiming under him were not estopped from denying the right of Valle to seven hundred arpens, in the portion set apart to Brown and wife, then the whole of Brown's interest in that lot passed to Clemens, subject to a deduction on account of the one hundred and eight arpens remaining of Valle's original share, which was included in the lot set apart for Brown and wife. The Circuit Court decided that Brown's subsequently acquired title did not enure to the benefit of Valle, and that there was no estoppel on Brown or Clemens, and by its judgment gave to the heirs of Valle the one hundred and eight arpens.

1. The deed from Brown and wife to Valle contains no covenants for title to the property conveyed. It carefully avoids the use of the words which, under our statute, contain certain covenants for title. It was, then, nothing but a deed of release or quit claim of the title then in Brown and wife. It did not operate, as most probably it was intended, upon the title in Mrs. Brown, for it was not properly acknowledged for that purpose.· If the title subsequently acquired by Brown did not enure to Valle, then, after Brown's death, Valle and his heirs had no title to the seven hundred arpens.

The deed to Valle being a mere quit claim, without warranty, the title subsequently acquired by Brown would not at common law enure to the benefit of Valle, either to transmit the subsequently acquired title, or by way of estoppel to prevent circuity of action. In Coke Litt. 265, *a* and *b*, it is laid down that no right passeth by the release but the right which the releasor hath at the time of the release made; as if the son release to the disseisor of his father all the right which he hath, or may have, without clause of warranty, after the death of his father, the son may enter against his own release, because he hath no right at all at the time of the release made, the right

being at the time in the father. This doctrine has been gene-
rally maintained in the American courts and is applied to deeds
of bargain and sale without warranty. *McCraken* v. *Wright*,
14 John. R. 193. *Jackson* v. *Hubble*, 1 Cowen, 613. *Jack-
son* v. *Winslow*, 9 Cowen, 13. *Dart* v. *Dart*, 7 Conn.
250. *Lowry* v. *Williams*, 13 Maine, 282. *Douglass* v.
*Scott*, 5 Ohio, 194. *Dodswell* v. *Buchanan*, 3 Leigh, 376.
*Bogy* v. *Shoab*, 13 Mo. Rep. 366.

But again, the language of the granting part of the deed
operates only on the right, title, interest, estate, claim and de-
mand of Brown and his wife, or either of them, at law or in
equity, as well in possession as in expectancy. Unless the
words "in expectancy" can extend the grant to a title sub-
sequently acquired by purchase, it is clear that the other words
would confine the operation of the deed, by their own descrip-
tion of the title conveyed, to the title then in Brown and his
wife. *Brown* v. *Jackson*, 3 Wheat. 449. The words "in
expectancy" do not comprehend a title to be thereafter purchas-
ed. An estate in expectancy is an estate, the possession of
which, a person is entitled to have *in futuro*, or, as is said in
Cruise's Dig. tit. 16, chap. 1, sec. 1, it is an estate where the
right to the pernancy of the profits is postponed to some future
period. The right here conveyed, described by the words "in
expectancy," must be some right that the grantors are to have
the fruits and enjoyment of, by reason of their present rela-
tions to the title of the land. A future acquisition, by pur-
chase, is not included. The deed, then, by its own terms,
operates only so far as the grantors had right at the time.

It is insisted that the sixth section of the act of 1825, regu-
lating conveyances, operates to vest the title acquired by
Brown in Valle. It is not necessary here to say, whether the
views of that act, as expressed in *Bogy* v. *Shoab*, 13 Mo.
Rep. 375, are concurred in. That case certainly gives to the
language of the section a very extended operation, when it
allows it to embrace any case of the conveyance of title with-
out warranty, where the grantor at the time had no title, but

Valle v. Clemens.

afterwards acquires title. But, without now stopping to discuss the meaning and operation of that section, it is sufficient for the present case to say that the opinion in *Bogy* v. *Shoab* distinctly and clearly maintains that the act does not intend "that a quit claim deed, although it uses language to pass the fee and not any smaller estate, would therefore pass a new title not belonging to the grantor when he makes the deed. It was hardly intended to apply to a deed conveying all right, title and interest of the grantor." Such deed is not supposed to be within the contemplation of the section, because it does not purport to convey "an estate in fee simple absolute." This is the construction of the section given in that case, and this construction would clearly exclude the conveyance to Valle from the benefit of the enactment. Again, it is conceded in the argument, and is admitted in the record, that, at the date of the deed from Brown and wife to Valle, there was title in Mrs. Brown to two sevenths of the whole tract, a quantity exceeding that conveyed to Valle ; and if the deed had been acknowledged in such form as to affect her interest, Valle would, under it, have claimed his land as a part of her share of the tract. Now, under such circumstances, it would be a strange mode of construing the deed to say, that it was not intended to operate on her interest, then actually existing. But Brown is made the principal grantor of the land, so that the deed will pass a title subsequently acquired by him. As, by its terms, it operates only upon the present title existing in the grantors, and as there was then a title in them, the deed being without warranty, cannot be made to convey any title subsequently acquired. The fact that the instrument was not properly acknowledged to effect the intention which is apparent upon the face of the deed, will not authorize us to give to the deed itself a construction different from the legal import of its own terms. It will not authorize us to say that the parties meant to convey a different interest from that they then owned, when that is the interest which the deed professes to convey.

2. On the question, whether Brown, and Clemens claiming

under him by subsequent purchase, are bound by an estoppel *in pais*, it is sufficient to say that the only acts of Brown, of which evidence was given, are, first, verbal admissions that Valle was entitled to upwards of eight hundred arpens of the land, and, second, that he was present at a survey made for Valle, by which a tract containing the seven hundred arpens conveyed by Brown and his wife was laid off for Valle. No evidence was given of any possession by Valle, under such survey, or of any other fact connecting Brown with it, than his presence when the survey was made. The case in the record is in no respect like the case of *Taylor & Mason* v. *Zepp*, 14 Mo. Rep. 487. The present is not a case of fixing a boundary between the contiguous tracts of different proprietors, but it is attempted to make the single fact of Brown's presence at a survey, proved by a single witness, who says no more than "R. T. Brown was present when this survey was made by me in 1845," operate an estoppel on Brown and those claiming under him, so as to give title to Valle's heirs in fee simple to a tract of land for which they had no operative conveyance. According to the statement of the principles on which such estoppels arise, as made in *Taylor & Mason* v. *Zepp*, there was no estoppel here.

The judgment of the Circuit Court is, with the concurrence of the other judges, affirmed.