# WILLIAM H. OWEN et al. v. MARTHA E. TRAIL et al., Appellants.

### In Banc, February 11, 1924.

1. **CONVEYANCE: Intention: Qualifications.** There are certain qualifications to the rule that the intention of the parties must be gathered from the entire deed and the deed interpreted so as to carry out that intention, namely: (a) the intention must be gathered from the language of the deed, aided where necessary by the surrounding circumstances, and (b) the supposed intention cannot prevail against settled rules of law.

2. ————: **To Daughter and Heirs of Her Body: Fee Tail.** A conveyance to a daughter and "the heirs of her body forever" so clearly creates an estate tail that no intention should be allowed to nullify the legal operation of the words or change their effect unless such intention clearly appears elsewhere in the deed.

3. ————: ————: **Qualification: Retention of Possession.** A qualifying part of the granting clause of a deed, conveying lands to a daughter and the heirs of her body, that the daughter is not to come into possession of the real estate or to exercise any control over it until after the death of the grantor, does not effect the investiture of the estate granted to the daughter, nor operate to enlarge it into a fee simple.

4. ————: ————: ————: **Exclusion of Others: Covenant of Assurance.** A recital in the latter part of a deed that "no person claiming ownership under us shall ever have any right to any of the real estate or personal property conveyed by us by this deed of gift" did not manifest an intention to enlarge the life estate granted to their daughter by the granting clause conveying the real estate to the daughter "and the heirs of her body." The recital was probably intended by the ignorant scrivener as a covenant for further assurance, but was only a limited covenant for quiet enjoyment.

5. ————: ————: **Intention: Shown by Surroundings: Ignorance of Scrivener: Bodily Heirs of Child.** A deed made by husband and wife in 1864 granted the real estate in suit to their daughter and the heirs of her body, reserving possession and right of control in the grantors until their death. The daughter was then a young girl, living with her parents, and continued to live on the place until both were dead. The husband died in 1866, and the wife in 1893. The deed was duly acknowledged and recorded in 1866, six days after the husband's death, The ignorance of the scrivener

Owen v. Trail.

is apparent from the face of the instrument. The daughter conveyed the property in 1909, and died in 1918, without issue, and defendants claim under her deed. The plaintiffs are heirs of said husband, and claim title on the theory that the deed conveyed to the daughter a fee-tail estate, which by statute was converted into a life estate in her, with remainder to the heirs of her body, and as the daughter died without issue the title upon her death reverted to the right heirs of the grantor. *Held*, that there is nothing in the surroundings of the parties at the time the deed was made, nor in their acts in their relation to each other, nor in the manner in which they treated the matter, nor in the ignorance of the scrivener, that affected the force of the instrument, or manifested a different intention from that expressed in .its granting clause; nor is that intention weakened, nor can the life estate be enlarged into a fee simple, by the fact that the daughter, then a young girl, had no children to take the remainder, but on the contrary the deed is to be construed by its terms and immediate surroundings, and not by subsequent unforeseen events.

6. ———: ———: **Ignorance of Scrivener.** The fact that the scrivener and the parties were ignorant and did not understand the legal effect of the grant to a daughter "and the heirs of her body" is *not sufficient ground for a holding that the intention was to convey* to the daughter a fee simple. To so rule would be to do violence to the well established construction of those words and the rules of law applicable to them. [Following Utter v. Sidman, 170 Mo. 284, and other cases.]

7. ———: ———: **Testamentary: Future Enjoyment.** If the terms of the deed show an intention to pass a present irrevocable interest in the property, the fact that it contains a limiting condition upon its present enjoyment does not make it testamentary. A deed conveying land to a daughter and the heirs of her body upon the express condition that the grantees are "not to come into possession" or "to exercise any control" over the property "until after the death" of the grantors, presently vested a future estate in the grantees, and simply postponed their enjoyment of it until the death of the grantors, and was not testamentary in character.

8. ———: ———: ———: **The Words ''Control and Possession.''** The words "possession" and "control" used in a deed conveying real estate to a daughter and the heirs of her body upon the express condition that they are "not to come into possession" or "to exercise any control over the same until after the death" of the grantors did not mean that the grantee had no present right to convey or encumber the property or otherwise affect the title, where the daughter, then a young girl, lived with the grantors upon the

premises and continued to live there with them during their natural lives. The word "control" in such case referred to the management of the crops or of the improvements, and the word "possession" was insufficient to express the complete intention concerning them, because the grantee did in fact live upon the premises with the grantors.

9.  ———: ———: **Covenant to Stand Seized.** Whether a deed from parents to a daughter "and the heirs of her body" was a covenant to stand seized, and under the statute (Sec. 2262, R. S. 1919) the legal title vested instantly in the grantee, is unimportant where it is held that the deed granted a life estate to the daughter, with remainder in her bodily heirs; for, if a covenant to stand seized, the grantors would stand seized to the use of the daughter only in a life estate.

10.  ———: ———: **Death Without Issue: Reversion to Right Heirs: Limitations.** If the life tenant in a deed conveying land to her and the heirs of her body, dies without issue, the title reverts to the grantor's heirs, and their action of ejectment is not barred by any statute of limitations, if brought within one year after the life tenant's death, although she and her grantees may have been in exclusive possession for twenty-five years.

Appeal from Lincoln Circuit Court—*Hon. Edgar B. Woolfolk,* Judge.

AFFIRMED.

*Creech & Penn* and *Howell & Jackson* for appellants.

(1) The court erred in rejecting evidence to the effect that William Trail had made disposition of all of his property to his other children, except the lands and personal property described in the purported deed. Speed v. Terminal Ry. Co., 163 Mo. 113; Long v. Timms, 107 Mo. 512; Aldridge v. Aldridge, 202 Mo. 556; Cross v. Hoch, 149 Mo. 325.   (2)   In construing an instrument of writing, the intent of the grantor must govern, and such intent must be gathered from the four corners of the instrument.   See authorities cited under Point 4.   (a) The instrument under which plaintiffs claim title is a

grant *in futuro* and not *in praesenti;* it is to take effect only on the death of William Trail; it is not executed as prescribed by law for the execution of wills, and is void. Murphy v. Gabbert, 166 Mo. 596; Griffin v. McIntosh, 176 Mo. 392; Givens v. Ott, 222 Mo. 395; Aldridge v. Aldridge, 202 Mo. 572; Goodale v. Evans, 263 Mo. 219; Hohenstreet v. Segelhorst, 285 Mo. 507. (b) Disposition of both real and personal property is made in the instrument under review, and the whole instrument reveals the idea that the disposition was testamentary. Aldridge v. Aldridge, 202 Mo. 572. (3) The instrument although testamentary in character and void for that reason, was color of title, and Sarah Trail, the daughter, having gone into possession of the lands, became the owner thereof by the running of the Statutes of Limitation. Mansfield v. Pollock, 74 Mo. 185; Fugate v. Pierce, 49 Mo. 441; Smith v. Johnson, 107 Mo. 494; Hickman v. Link, 97 Mo. 488; Hamilton v. Boggess, 63 Mo. 233; Pharis v. Bayless, 122 Mo. 116; Shumate v. Snyder, 140 Mo. 77; Perkins v. Irvin, 200 Mo. 490; Dunnington v. Hudson, 217 Mo. 100. (4) This instrument, as a form of conveyance, operates as: (a) A covenant on the part of the grantor to stand seized of the estate to the use of himself and wife for life, and at their death to his daughter, and the operation of the Statute of Uses on the covenant forced the fee in said daughter *eo instante;* or (b) a conveyance of the whole of the title held by the grantor the daughter, by virtue of the very terms of the written instrument. Intention (the soul of the instrument, expressed anywhere, in any words—the simpler and plainer the better—in the deed) of the grantor, gathered from the four corners of the instrument in the light of the circumstances surrounding him at the time of its execution, is now the pole star of all construction—mere words are not the principal thing. Eckle v. Ryland, 256 Mo. 441; Garrett v. Wiltse, 252 Mo. 707; Utter v. Sidman, 170 Mo. 294; Aldridge v. Aldridge, 202 Mo.

572; Walton v. Drumtra, 152 Mo. 497; Cross v. Hoch, 149 Mo. 338; Jamison v. Fopiano, 48 Mo. 195; Gibson v. Bogy, 28 Mo. 479. Under Missouri decisions, the instrument in the case at bar raises a presumption of lack of technical knowledge on the part of all persons connected with its drafting and execution, necessitating an interpretation in keeping with the intelligence of the parties to effect their intent. (b) This, in particular, is presumed from their signing by mark. Nations v. Spence, 235 S. W. (Mo.) 1065; Cross v. Hoch, 149 Mo. 338. (c) Technical words must be construed in the sense in which such grantor used them, and carping and captious criticisms of such words must be disregarded. Cross v. Hoch, 149 Mo. 338; Tygard v. Hartwell, 204 Mo. 205; Tennison v. Walker, 190 S. W. (Mo.) 12; Aldridge v. Aldridge, 202 Mo. 572; Chow v. Kellar, 171 Mo. 221; Shepherd v. Anderson, 192 S. W. (Mo.) 952; Willis v. Robinson, 237 S. W. (Mo.) 1032. (d) And non-technical words must be taken in their usual acceptation. Bradshaw v. Bradbury, 64 Mo. 334. (e) Any doubt existing from the terms of the instrument is to be resolved in favor of the grantee. Bray v. Conrad, 101 Mo. 337; Bradshaw v. Bradbury, 64 Mo. 336; Linville v. Greer, 165 Mo. 380. (b) Every conveyance of real estate conveys all the title of the grantor therein, unless a less estate is conveyed unequivocally. R. S. 1919, sec. 2265; R. S. 1855, ch. 32, sec. 2, p. 355; Mc-Mahill v. Schowengerdt, 183 S. W. (Mo.) 606; Bray v. Conrad, 101 Mo. 337; Osborn v. Weldon, 146 Mo. 193. (g) In order to convey a fee-tail estate, no doubt must be left from the terms of the instrument. Gannon v. Pauk, 200 Mo. 94; Sec. 2267, R. S. 1919; Laws 1825, sec. 4, p. 216. (5) Therefore, this instrument is either: (a) A covenant on the part of William Trail to stand seized of the estate to the use of himself and wife for life, and at their death to Sarah A., his daughter; and the operation of the Statute of Uses on the covenant forced the fee in said daughter *eo instante.* 1 Devlin, on Deeds (3 Ed.)

sec. 22, p. 33; Tiedeman on Real property (3 Ed.) secs. 332, 339; 1 Washburn on Real Property (3 Ed.) secs. 180, 179; Sec. 2262, R. S. 1919; Sec. 1, ch. 32, p. 354, R. S. 1855; Sec. 2267, R. S. 1919; Sec. 5, ch. 32, p. 355, R. S. 1855; Aubuchon v. Bender, 44 Mo. 561; Guest v. Farley, 19 Mo. 151; Chancellor v. Windham, 1 Rich Law (S. C.) 161; Rembert v. Vetoe, 89 S. C. 216; Racker v. Brown, 183 Mass. 427; Merrill v. Publishers Paper Co., 77 N. H. 286; Jackson v. Swart, 20 Johns. (N. Y.) 85; Barrett v. French, 1 Conn. 354, 6 Am. Dec. 24; Barry v. Shelby, 5 Tenn. (4 Hamm) 229; or (b) A conveyance of the whole of the title held by the grantor to the daughter, by virtue of the very terms of the written instrument. Adams v. Cary, 226 S. W. (Mo.) 834; Tennison v. Walker, 190 S. W. (Mo.) 12; Garrett v. Wiltse, 252 Mo. 708; McDowell v. Brown, 21 Mo. 57; English v. Beehle, 32 Mo. 186. "And no person claiming ownership under us shall ever have any right to any of the real estate conveyed by us mentioned in this deed of gift made by us, as witness our hands and seals." Ewing v. Shannahan, 113 Mo. 195.

*Robert L. Sutton, Grover C. Huston* and *Derwood E. Williams* for respondents.

(1) The deed created a fee-tail estate, which under the statute became an estate for life in Sarah A. Trail, with the remainder in fee to the heirs of her body. Hunter v. Patterson, 142 Mo. 310; McCullock v. Holmes, 111 Mo. 445; Wood v. Taice, 103 Mo. 329; Reed v. Lane, 122 Mo. 311; Philips v. Laforge, 89 Mo. 72; Chas. v. Patch, 87 Mo. 463; Farrar v. Christey, 24 Mo. 453; Bone v. Tyrell, 113 Mo. 175; Elsca v. Smith, 273 Mo. 396; Case v. Sipes, 280 Mo. 110; Femmson v. Walker, 190 S. W. 9; Burris v. Page, 12 Mo. 358; Charles v. Neill, 214 Mo. 187; Chiles v. Bertleson, 21 Mo. 316; Donnan v. Intelligencer, etc. Co., 70 Mo. 174. (2) The instrument is a good and valid deed, and is not testamentary in character. It immediately created an interest in the land in the grantees, but the

enjoyment of that interest was not to take effect until after the death of the grantors. Sec. 2271, R. S. 1919; Christ v. Kuehne, 172 Mo. 118; O'Day v. Meadows, 194 Mo. 586; Wimpey v. Ledford, 177 S. W. (Mo.) 302; Hohenstreet v. Segelhorst, 285 Mo. 507; Priest v. McFarland, 262 Mo. 229; Dawson v. Taylor, 214 S. W. (Mo.) 852; Sims v. Brown, 252 Mo. 58; Dozier v. Toalson, 180 Mo. 546.

WHITE, J.—Action in ejectment for tract of land in Lincoln County. The petition, in the usual form, was filed February 19, 1919. The answer pleads the ten-year, the twenty-four-year, and the thirty-year Statute of Limitations, and alleges further that Martha E. Trail is the owner of the land in fee simple.

Plaintiffs claim as the heirs and descendants of William Trail, deceased, who is the common source of title. The defendants claim as grantees of Sarah A. Trail, daughter of William Trail. The controversy turns upon the construction of the following conveyance, executed by William Trail and Sarah Trail, his wife, conveying the property to their daughter, Sarah Trail, sometimes named in the record Sarah *A.* Trail, as follows:

"This Indenture entered into this 20th day of August in the year of our Lord one thousand eight hundred and Sixty four between William Trail and Sarah Trail, his wife, of the first part and Sarah Trail of the second part, boath parties of the County of Lincoln State of Missouri Witnesseth that for and in consideration for the grate love and regard we have for the said Sarah Trail being our beloved daughter and for the father consideration for the tender regard She has Shown us in our declining years *have this day by this deed of Gift Granted deeded and convaied into her the said Sarah Trail the partie of the Second part and the heires of her body for ever—but it is distinctly understood by the parties that the Said Sarah Trail the partie of the Second*

*part is not to come in possession of the real estate de-scribed nor to exersize aney controle over the Same un-til after the death of William Trail & Sarah Trail the parties of the first part and being the Father and Mother of the Second partie.* Said Tract of land described as follows (Towit) Seventy Six acres being the North half of the South East quarter of Section Thirty one in Town-ship Fifty of Range one west of the fifth principal Meridian to have and to hold the Said Granted prem-icies with all the priviligs and appertainances thereto belonging to the aforesaid Sarah Trail and the heirs of heir body for ever and we Father deed Give and coney unto the partie of the Second part two beadstides one of them made by Thompson and the other bought from John Hall Two fether beds two underbeads and four pil-lows two bolsters and all the quilts coverleds blancurts and Sheet that She clames as belonging to Said beads—one pres one falling leaf Tabel on set of windsor chimes one big spinning wheel one Small flax wheel—one Reel—one Set Stone chaney plate one Set Stone chaney cupes and Susers—one Set of Read plates one Set of Tea Spoons —one Set of Tabel Spoons—one Set of Knives and Forks—one Sugar Bowl—one large Kittel One coocking stove—one worming Stove—one clock—and all the milk Veseles and chirn—and all the wool and spun yarne. Three cowes and one calf—Three Heffers one sucking colt called Kit—Ten head of Sheep one Sow and four Shoates—all of the above described personal property to be heirs the said Sarah Trail at our death—and no person calaming ownership under us Shall ever have any right to aney of the real Estate or personal prop-erty convied by us mentioned in this deed of Gift made by us as witness our hands and Seales.

　　　　　　　　　　　　　his
　　　"William　x　Trail (Seal)
　　　　　　　　　mark
　　　　　　　　　heir
　　　　　"Sarah　x　Trail (Seal)
　　　　　　　　　marck
　"Government Stamp $ .50"

The deed was duly acknowledged August 20, 1864, and filed for record April 17, 1866. William Trail died April 11, 1866, and Sarah Trail, his widow, died January 7, 1893; Sarah A. Trail, the daughter, died May 10, 1918.

The plaintiffs claim title as the heirs of William Trail, deceased, on the theory that the deed above set out conveyed to Sarah A. Trail, the daughter, a fee-tail estate which under Section 2267, Revised Statutes 1919, was converted into a life estate in her with the remainder to the heirs of her body; that she having died without issue the title reverted to the heirs of William Trail, the grantor.

The defendants claim:

(a) That the deed passed Sarah A. Trail a fee simple title, or

(b) That the deed was testamentary in character, inoperative to pass any title, in which case it passed only color of title, and the several statutes of limitations would operate in favor of Sarah A. Trail and her grantees because of adverse possession, or that the deed is a covenant to stand seized to the use of Sarah A. Trail, and under Section 2262, Revised Statutes 1919, the title is vested *eo instante* in the usee.

The trial judge found the issues for plaintiffs, and defendants appealed.

I. What estate did Sarah A. Trail, the daughter, acquire by the deed? The appellant stresses the rule that the intention of the parties must be gathered from the entire instrument, and the deed interpreted so as to carry out that intention, if possible. Numerous authorities are cited showing that to be the settled doctrine in this State.

There are certain qualifications of that rule:

(a) The intention must be gathered from the *language* of the instrument, aided where necessary by the

surrounding circumstances. The instrument must be interpreted by what the grantor actually said, not by what else he may have meant to say. [18 C. J. 254, 258; Ashbaugh v. Ashbaugh, 273 Mo. l. c. 360; 8 R. C. L. 1040; Whitmore v. Brown, 100 Me. 410; Bartholomew v. Muzzy, 29 Am. St. 206.]

(b) The supposed intention cannot prevail against settled rules of law. [18 C. J. 259; Aetna Life Ins. Co. v. Hoppin, 249 Ill. l. c. 413; Dooley v. Greening, 201 Mo. l. c. 354.] Where certain words and phrases have acquired a definite technical meaning in conveyances, that meaning will prevail unless a contrary intention appears in the instrument.

The conveyance under consideration affects both real estate and personal property. Take all the operative and limiting words in the conveyance affecting the real estate and consider them, as follows:

". . . *have this day by this deed of Gift Granted deeded and convaid into her the said Sarah Trail the partie of the Second part and the heires of her body for ever—but it is distinctly understood by the parties that the Said Sarah Trail the partie of the Second part is not to come in possession of the real estate described nor to exersize aney controle over the Same until after the death of William Trail and Sarah Trail the parties of the first part and being the Father and Mother of the Second partie. . . .*

"*and no person calaming ownership under us Shall ever have any right to aney of the real Estate or personal property convied by us mentioned in this deed of Gift made by us as witness our hands and Seales.*"

There can be no question that the granting clause vests in Sarah Trail a fee-tail, which under the statute would become a life estate. The expression "the heirs of her body" has been construed so often Qualifications. and is so thoroughly understood as words of purchase, not of limitation, that no intention can be allowed to nullify their operation or change their ef-

fect unless such intention clearly appears in the instrument. The qualifying part of the granting clause to the effect that the grantee was not to come into possession or control of the property during the life of grantor would not have the effect to modify that investiture of the life estate. That clause is claimed by appellant to make the instrument testamentary, conveying no title whatever. It is not contended that it operates to enlarge the estate granted. This will be considered below in Paragraph II. Neither is there anything in the last part of the instrument which would show an intention to enlarge the estate to one of fee simple where the grantors say: "no person calaming ownership under us Shall ever have any right to aney of the real Estate or personal property convied by us mentioned in this deed of Gift made by us as witness our hands and Seales." The ignorance of the scrivener is apparent. He evidently prided himself on his knowledge of legal forms and by these words sought to express in his own way, or according to his best recollection, a covenant for further assurance, or quiet enjoyment. He succeeded only in expressing a warranty against anyone claiming under the grantor, a limited covenant for quiet enjoyment.

There is nothing in the express terms of the instrument which, according to the rule so long and so thoroughly established in this State, by any construction could modify the effect of the granting clause.

It is argued that the intention appears in the surroundings, in the peculiar character of the instrument and the ignorance of the scrivener. As to the surroundings, the daughter was living with her parents and continued to live on the place with them until both were dead, and until she conveyed it in 1909. There is nothing in the acts of the parties in their relation to each other, nor in the manner in which they treated the matter that could affect the force of the instrument. It is even asserted that because Sarah A. Trail had no children to take in remainder, the intention to vest a fee simple title in her appears. That is to say,

Surroundings.

the deed is to be construed, not by its terms and immediate surroundings, but by subsequent unforeseen events. To state that argument is to destroy it. The deed was made in 1864. The grantee was probably a young girl, for she lived fifty-four years after that. Her parents naturally expected her to have children, otherwise the words "heirs of her body" would be meaningless.

Against all the precedents it is claimed that because the scrivener was ignorant of the meaning of legal terms which he used, the intention to convey the fee simple title appears in the instrument. Of course allowance must be made for such ignorance. It was said in the dissenting opinion in Welch v. Finley, 281 Mo. l. c. 696:

Ignorance of Scrivener.

"Such a writer is apt to use such technical terms as he may recall at the moment, in order to give an air of legal knowledge to the document, but he usually has little realization of the significance of the words he employs. To him they are mere matters of form."

Giving that argument its full effect it may be said that the scrivener, feeling the importance of his legal knowledge which he wished to display in the instrument, used the words "heirs of her body," intending them to have the same effect as the word "heirs," believing that to be the correct way to convey a fee simple title; that he had heard such words used, or had seen them in print and misunderstood their meaning. It is unnecessary to argue that that sort of mistake could not be inferred and be given effect against the well-established construction of the language.

The leading case in this State, cited by appellant, discusses the rule that the intention must be gathered from all the instrument. [Utter v. Sidman, 170 Mo. 284.] That case is cited in nearly all subsequent cases which consider the subject. It will be well to note just what that case holds: The deed under consideration there (l. c. (288) conveyed the land in dispute to "Frances A. Clark" (without any qualifying words); the *habendum* is "to have and to hold," etc., "unto the said Frances A. Clark

and her bodily heirs and assigns;'' the warranty was to
"Frances A. Clark, her heirs and assigns.'' Now in that
case the granting clause expressed fee simple conveyance.
The warranty was to a fee simple in the grantee.   The
*habendum* was to her and her ''bodily heirs.   This court
held that, notwithstanding the parts of the instrument
which would have the effect to convey fee simple, the
limitation in the *habendum* reduced the effect to a life
estate in the grantee.   It might as well be said that the
justice of the peace who wrote that deed attempted to air
his knowledge of the law by using the words ''bodily
heirs,'' when he meant ''heirs.''  Certainly the supposed
intention in that case to create a fee simple was more ap-
parent than in the present case.   Here the only reason
that can be advanced for holding that a fee simple title
was conveyed is that the parties to the transaction were
ignorant and did not understand the use of the terms
which they employed.   That method of construction
would do violence to the rules of law stated above.
Several cases discuss the matter of an ignorant scrivener.
[Willis v. Robinson, 291 Mo. 664; Welch v. Finley, 281
Mo. 696.]   In none of these has the supposed ignorance
of the scrivener been allowed to give effect to a supposed
intention of the parties where it would do violence to
language of settled meaning.

   II.   The second proposition is that the conveyance is
testamentary in character on account of the
qualification in the granting clause:

   ''   .   .   .   but it is distinctly understood by the
parties that the Said Sarah Trail the partie of the Second
part is not to come in possession of the real estate de-
scribed nor to exercise aney controle over the Same until
after the death of William Trail & Sarah Trail the parties
of the first part and being the Father and Mother of the
Second partie.''

   There is no doubt that an estate to commence in the
future may be granted by deed, under Section 2271, Re-
vised Statutes 1919, and that is not disputed.   [Dawson

v. Taylor, 214 S. W. 852; Hohenstreet v. Segelhorst, 285 Mo. 507.] In the latter case this court reviews the authorities (l. c. 519, 520, 521) which announce the rule. If the terms of the deed show that the intention of the grantor is to pass a *present irrevocable interest* in the property, and that a limiting condition operated only upon the present enjoyment of the premises, then it would be a valid deed. But if the instrument is to have no effect until after the death of the grantor it is testamentary and inoperative unless witnessed as a will is required to be witnessed. [See also Christ v. Kuehne, 172 Mo. 118; Wimpey v. Ledford, 177 S. W. 302; Priest v. McFarland, 262 Mo. 229.] While the parties to this deed, or the scrivener, were ignorant of spelling, the instrument shows they understood what they were doing in respect to the vesting of the title. If it had been the intention to say the grantee should have no interest in the premises, or that the deed should not take effect, or that it should not be delivered, until after the death of the grantors, some words easily could have been used to show that intention. The words used were "possession" and "control," which have well understood meanings. The appellant argues that use of the word "control" means that the grantee had no authority to convey or to encumber the property or to do anything which would affect the title granted here. "Control" has no such meaning. It is not synonymous with "deal in" or words of similar significance. Control means to "exercise a restraining or directing influence over; to regulate," as applied to the physical property. It does not apply to the title or estate granted. The grantee was not to exercise any control, such as the management of the crops or of the improvements. That, evidently, is what was meant. The word "possession," as used under the circumstances, was insufficient to express the intention, because the grantee did in fact live on the land with her parents. In order that the word "possession" might not be misunderstood they used the word control; the life estate remaining in the grantors left them the power to control. The instrument

302 Mo. Sup.—20.

here shows plainly the intention to postpone the enjoyment only, the estate *in futuro* is presently vested.

Light is thrown on the intention by a distinction which the grantees made between the personal property and the real estate. After describing the personal property, the instrument reads: ''all of the above described personal property to be heirs the said Sarah Trail at our death.'' Then follows the special covenant mentioned. That might plausibly be said to postpone the investiture of title to the personal property until after the death of the grantors. It is significant that no such language is used in regard to the real estate.

Since Sarah A. Trail had a life estate and conveyed it to defendants, no cause of action accrued to plaintiffs until her death in 1918, and they could not be barred by any statute of limitations.

**Limitations.**

III. Finally it is argued that the deed is a covenant to stand seized to the use of Sarah A. Trail and that under operation of Section 2262, Revised Statutes 1919, the legal title would vest *eo instante* in the grantee. This fact would be entirely unimportant if it were correct, because grantors would not stand seized to the use of the grantee in any different estate than that expressed in the instrument, and if the instrument shows life estate in Sarah Trail, with remainder to the heirs of her body, the effect would be exactly the same as if we give the deed the construction contended for by the respondent. Sarah A. Trail having no heirs of her body to take by the operation of the deed, the estate reverts by the operation of law to the heirs of the grantor. This proposition is not contested.

**Covenant to Stand Seized.**

The judgment is affirmed. All concur, except *Woodson, C. J.,* who dissents.

Headnotes: 1, **Deeds**, 18 C. J. sécs. 198, 208; 2, **Deeds**, 18 C. J. sec. 314; 3 and 8, **Deeds**, 18 C. J. sec. 365; 4, **Covenants**, 15 C. J. sec. 47; 5 and 6, **Deeds**, 18 C. J. sec. 198; 7, **Deeds**, 18 C. J. sec. 6; 9, **Covenants**, 15 C. J. sec. 44 (1926 Anno); 10, **Estates** 21 C. J. 173.