FRANK OTT and FRANK OTT, Administrator of the Estate of ANNIE BONNIE OTT, Deceased, Appellant, v. JOHN L. PICKARD; ETTA E. PICKARD; CLIFTON CHASE WILSON; HOWARD MIDDLETON WILSON; FAYE WILSON; LULA MAY WILSON; JENNIE JUNE CLINE; and PAUL C. CLINE, Respondents, No. 42131—237 S. W. (2d) 109.

Division Two, February 12, 1951.

Rehearing Denied, March 12, 1951.

*Lewis F. Randolph* and *A. Leonard Guitar* for appellant.

824

*J. B. Beavers, John J. Robison* and *Harold L. Miller* for respondents.

[110] TIPTON, J.—The petition is in two counts; the first is to try and determine title and the second is for partition. Appellant is the widower of Annie Bonnie Ott who died October 22, 1948, without having any children and intestate. Appellant contends that he is entitled to one-half of the real estate in dispute because of his election to take one-half of the real estate of his deceased wife, subject to the payment of her debts. Respondents Clifton Chase Wilson, Howard Middleton Wilson, Lula May Wilson and Jennie June Cline were brothers and sisters of Annie Bonnie Ott and they survived her. After her death these brothers and sisters conveyed this tract of land in dispute to John L. Pickard and Etta E. Pickard. The trial court found against the appellant on the theory that his deceased wife only had a life estate in this tract of land. He has appealed to this court.

Francis Barton Wilson was the father of these five children and he died in the year 1916, leaving a will which was duly probated. He devised certain tracts of land to his widow and children. To his widow he gave a life estate in certain tracts of land. To his son, Clifton Chase Wilson, he gave certain tracts of land in fee, part of which was subject to the life estate in his wife. The land he gave to his son, Howard Middleton Wilson, was in fee, but a part of it was subject to the life estate in the widow.

Annie Bonnie Wilson and her sister Lula May Wilson were unmarried at the time of testator's death. He gave to each of these daughters a tract of land. After the legal description of each tract of land given to these daughters, the will says, "to have and to hold during her lifetime only, and at her death to descend to and become the property of her blood heirs in fee-simple."

The tract of land he devised to his married daughter, Jennie June Cline, was given under the following conditions and limitations, "to

have and to hold during her lifetime [111] only, and at her death to descend to the heirs of her body, if she have any living at the time of her death, if she have no child or descendants of a child living, then said land to descend to, and become the property of her blood heirs in fee-simple."

On March 1, 1917, appellant married Annie Bonnie Wilson, the deceased, and farmed this tract of land in dispute until her death. The testator's widow died prior to the death of Annie Bonnie Ott. She was survived by her two brothers, Clifton Chase Wilson and Howard Middleton Wilson, her two sisters, Lula May Wilson and Jennie June Cline, and her husband, the appellant.

Shortly after the death of the testator, a dissatisfaction developed among his daughters over the difference between the way the tracts of land were bequeathed to his two sons and his three daughters. He bequeathed the two tracts of land to his sons so that they had a fee simple title but only a life estate in the tracts of land was bequeathed to his three daughters. Apparently to have a better family relationship there was an exchange of deeds in which the two sons and two daughters conveyed by quitclaim deed to the other daughter. For instance, the tract of land in question was conveyed by quitclaim deed to Annie Bonnie Ott by her two brothers and her two sisters, Lula May Wilson and Jennie June Cline. This deed was an ordinary quitclaim deed except that the following sentence was inserted after the legal description of the land: "This deed is made to clear title to the above described lands owned jointly by grantors and grantee."

The brothers and sisters of Annie Bonnie Ott were the contingent remaindermen to the tract of land devised to her by her father at the time of the exchange of the quitclaim deeds between the brothers and sisters. This is true for the simple reason that it could not be determined who were "her blood heirs" until her death. Nichols v. Robinson, 211 S. W. 14.

"But probably nothing is better understood in the law of conveyancing than that a mere quitclaim deed transfers and is designed to transfer only such title and interest as the grantor had when he delivered the deed. The earlier cases, following the statute, or applying it conversely, held a deed would not pass an after-acquired title unless the instrument purported to convey a fee simple absolute. Bogy v. Shoab, 13 Mo. 365, 378; Valle v. Clemens, 18 Mo. 486, 490. But the later decisions of this court permit a quitclaim deed to pass any interest subsequently acquired by the grantor if an intent to convey that interest be disclosed by the instrument. Douglass v. Hammel, supra, 313 Mo. loc. cit. 525, 285 S. W. loc. cit. 436; Inlow v. Herren, supra, 306 Mo. loc. cit. 52, 267 S. W. loc. cit. 895. In the Inlow Case the interest transferred with the indefinite expectancy of an heir apparent of living ancestors, the deed containing a recital

that the grantors quitclaimed not only their present right, title, and interest but also 'any right, title and interest that they may acquire in the future as heir' of two named ancestors." Williams v. Reid, 37 S. W. (2d) 537, l. c. 540.

The respondents contend that the quitclaim deeds exchanged in 1918 were ordinary quitclaim deeds, and these deeds conveyed only the interest that the grantors had at that date and not any title they may have thereafter acquired.

On the other hand, appellant contends that the quitclaim deed executed by the brothers and sisters to Annie Bonnie Ott was not an ordinary quitclaim deed but a quitclaim deed which on its face shows that these grantors not only conveyed the interest they had in this tract of land but any subsequently acquired interest of these grantors. The reason appellant makes this contention is because the deed says, "This deed is made to clear title to the above described lands owned jointly by grantors and grantee."

It is the primary rule of construction of contracts, deeds and wills that they must be construed as a whole, giving effect to every part if it is fairly possible to do so, and thus determine the true intention [112] of the parties. Swinney v. Continental Bldg. Co., 340 Mo. 611, 102 S. W. (2d) 111. In construing this quitclaim deed it is our duty to give every word, phrase and sentence some meaning if possible, and in so doing to be guided by the surrounding circumstances. Owen v. Trail, 302 Mo. 292, 258 S. W. 699.

Evidently something more was intended to be conveyed by the quitclaim deed than the contingent interests these grantors had at the date of the deed's execution. If that is all these grantors intended to convey an ordinary quitclaim deed would have served the purpose. But the quitclaim deed also had the above quoted sentence following the legal description in the deed and we must give some meaning to it. The intention of a grantor may be expressed anywhere in the deed, and in any words, and the court will enforce it no matter in what part of the deed it is found. Leeper v. Leeper, 347 Mo. 442, 147 S. W. (2d) 660.

The testator had bequeathed to his two sons a tract of land each in fee, but to each of his three daughters he bequeathed a life estate in the tracts of land he gave them. Evidently these deeds were exchanged in an effort to put the daughters in the same position as the sons in reference to their titles to the land held by them. In interpreting this deed these circumstances must be taken into consideration.

At the time the will was probated these grantors had a contingent remainder in the tract of land bequeathed to Annie Bonnie Ott and she had a life estate so, in a sense, the grantors and grantee did own the land jointly and they sought by this deed to "clear title" to this land.

A "clear title" has been defined by the Supreme Court of Montana to mean "title to the property free from any incumbrance, burden or limitation, uniting all the elements constituting ownership, including right of possession and right of property—i.e., fee-simple title." Gantt v. Harper, 267 Pac. (Mont.) 296, l. c. 298. See also Ogg v. Herman, 227 Pac. (Mont.) 476.

The case of Roberts v. Bassett, 105 Mass. 409, ruled a clear title means that the land is free from incumbrances.

In speaking of titles to real estate, the Court of Errors and Appeals of New Jersey in the case of Oakey v. Cook, 7 Atl. 495, held that the word "good" comprehends all the word "clear" does.

Sipe v. Greenfield, 244 Pac. (Okla.) 424, l. c. 425, quotes with approval the following from Thompson's Work on Real Property, Vol. 5, Sec. 4296-A: " 'In a contract to convey a good title, the word "good" comprehends all that the word "clear" does, and the term "clear title" as used in such contract, means that there are no incumbrances on the land.' "

The intention of the parties to the deed before us was not only for the grantors to convey their contingent remainder to this tract of land but they also tried "to clear title to the above described land," for the grantee, Annie Bonnie Ott.

When viewed with the surrounding circumstances in mind, we think the language of this deed shows that the grantors tried to convey not only the title they had at the time of the execution of the deed but any title they might have in the future. This is the only way they could attempt to "clear title to the above described land." To hold otherwise, we must ignore the sentence about clearing title that is in the deed. An ordinary quitclaim deed would have conveyed the contingent remainder interest these grantors had when the deed was executed. But as previously stated, this deed was more than an ordinary deed and we hold that this deed also conveyed their after-acquired title.

The appellant and the four surviving brothers and sisters testified, subject to objection, as to why the deeds were executed. The brothers said it was to pacify the girls. One of the sisters said that the purpose in making the deeds was to actually give the sisters the same kind of an estate the brothers had. The trial court did not directly rule on its admissibility but in his memorandum opinion stated that if [113] admissible it should not be considered to prevail over the written instrument. We agree with this ruling and also think this evidence is so vague, indefinite and unsatisfactory as to have no probative force.

Respondents contend that there was no adequate consideration for this deed that conveys an after-acquired title. There is no question of fraud in this case. The recited consideration in the deed is one dollar. Of course these brothers and sisters had a right to give

away their valuable lands if that was their pleasure. "The consideration expressed in deeds is open to explanation by parol evidence or otherwise in proper cases, but this cannot be allowed for the purpose of defeating the operative or granting clause of the conveyance." Clark v. Skinner, 334 Mo. 1190, 70 S. W. 2d 1094, l. c. 1097. Also see Schneider v. Johnson, 357 Mo. 245, 207 S. W. 2d 461. Of course, also the mere exchange of deeds would be a valid consideration.

It follows from what we have said that the judgment of the trial court should be reversed and the cause remanded for it to enter a new judgment in conformity with this opinion. It is so ordered. All concur.