## KJC DEVELOPMENT CORPORATION, Appellant,

v.

## LAND TRUST OF JACKSON COUNTY, Missouri, Respondent.

### No. SC 81683.

Supreme Court of Missouri, En Banc.

Dec. 21, 1999.

John R. Campbell, Jr., Felix B. Winston, Kansas City, for Appellant.

Henry D. Bledsoe, Kansas City, for Respondent.

WHITE, Judge.

The trial court denied KJC Development Corporation's (KJC) petition to quiet title to and for possession of certain real property. The court of appeals affirmed and we granted transfer. The property at issue is a seventeen-story office building described as "Swope's Addition, Lots 71 & 72—IMPROVEMENTS ONLY" located at 10th and Grand streets in downtown Kansas City. Also relevant is the land underneath and surrounding the building described as "Swope's Addition, Lots 71 & 72—LAND ONLY." Reversed and remanded.

## I

Although the parties moved for summary judgment, they submitted their case to the trial court on agreed facts. The trial court issued written "Summary of Proceedings, Findings of Facts, Order and

Judgment" that amounted to a judgment on the merits. Accordingly, we review the [1] record to determine whether the judgment is supported by substantial evidence, is against the weight of the evidence, or erroneously applies or declares the law.[1]

## II

Originally, Marvin Gates owned Lots 71 and 72, that included land and a building (collectively the "Property"). In 1925, Gates signed a 99–year lease agreement with DeVere Dierks for "All of Lots Seventy-one (71) and Seventy-two (72) in Swope's Addition" (the "Lease"). By the mid–1990s, the building sat empty, and no property taxes had been paid on the building or the land.[2] In addition, both the lessor and lessee before the foreclosure sale, GBA Corporation (GBA) and 1006 Grand Corporation (1006 Grand) respectively, were defunct. 1006 Grand forfeited its charter in 1993 and GBA forfeited its charter in 1996. Consequently, the tax liens on the land and the building were foreclosed, and the land and the building were offered for sale *separately* in September 1996.[3] KJC bought the "LAND ONLY"[4] and Land Trust of Jackson County, Missouri ("Land Trust") was awarded the "IMPROVEMENTS ONLY" by law.[5]

KJC claims the Lease remained in effect after the tax foreclosure sale, bound Land Trust as lessee, and that Land Trust defaulted on its obligation under the Lease to pay rent. KJC sued to quiet title to and for possession of the building. For reasons other than the ones addressed in this opinion, the trial court declared KJC the owner of the land, Land Trust the owner of the building, and concluded neither Land Trust nor the building was burdened by the Lease.

## III

In order to decide whether the Lease was enforceable against Land Trust, this Court must determine what interests passed to KJC and Land Trust by their respective court administrator's deeds, and whether these interests were passed subject to the Lease. The deeds themselves made no warranties or promises about what interest they transferred, but merely assigned, transferred and conveyed the following:

> [A]ll the right, title, interest and estate, in and to said parcel of real estate so stricken off and sold to said purchaser to have and to hold the same unto him, his successors, heirs and assigns, forever, with all the rights and appurtenances thereto belonging subject to valid recorded covenants running with the land

1. See *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976).

2. Although the parties agree that two separate tax bills existed for the Property, it remains unclear precisely how taxes were assessed because no tax bills of any kind were presented by the parties. KJC presumes the taxes on the building were assessed on the leasehold interest, *see Iron County v. State Tax Comm'n*, 437 S.W.2d 665, 670 (Mo. banc 1968), and taxes on the land were assessed on the reversionary interest. Land Trust of Jackson County, Missouri, to the contrary, presumes taxes on both the land and the building were assessed as interests in fee simple absolute.

3. *See* sections 141.210—141.810, RSMo 1994. All Missouri statutory references are to RSMo 1994 unless otherwise indicated.

4. On February 25, 1997, the Circuit Court of Jackson County issued a judgment approving and confirming the sale to KJC. On March 31, 1997, KJC was issued a court administrator's deed for the "LAND ONLY." "LAND ONLY" and "the land" are used interchangeably throughout this opinion.

5. *See* section 141.560 (discussing procedure whereby Land Trust is awarded foreclosed property not otherwise sold at a tax foreclosure sale). On January 14, 1997, the Circuit Court of Jackson County issued a judgment approving and confirming the award to Land Trust. On March 24, 1997, Land Trust was issued a court administrator's deed for the "IMPROVEMENTS ONLY." "IMPROVEMENTS ONLY" and "the building" are used interchangeably throughout this opinion.

and to valid easements of record or in use, as fully and as effectively to all intents and purposes in law. . . .

Like a quitclaim deed, this deed was "designed to transfer only such title and interest as the grantor had when he delivered the deed." [6]

■ We conclude whatever interests conveyed to KJC and Land Trust by court administrator's deeds, these interests were not subject to the Lease because the Lease was abandoned and forfeited by both 1006 Grand and GBA before the foreclosure sale. 1006 Grand failed to pay property taxes on both the land and the building since the early 1990s, as required by Article V, and forfeited its corporate charter in 1993. GBA forfeited its own charter in 1996, made no attempt to prevent the foreclosure sale in 1997, and did not even answer Count I of KJC's petition, which affected GBA.[7]

■ Upon this abandonment and forfeiture, the Lease terminated and the building became reattached to the land by operation of law and the Lease itself. First, Article XIII of the Lease severed the building from the land, making the building security for its own purchase price and for Lessee's other covenants under the Lease. Article XIII further provided, "upon the forfeiture or termination of this lease ... [the building] shall be reattached to the realty and shall revert to and become the property of the Lessors free and clear of any claim of the Lessee whatsoever." Second, even absent the

reattachment provision in the Lease, basic principles of landlord/tenant and property law create the presumption that a building reverts to the land on which it sits in the absence of a valid lease.[8] Nor does any evidence rebut that presumption.

Consequently, the court administrator's deed issued to Land Trust transferred no interest at all because the building, by the time of the foreclosure sale, had reattached and reverted to the land sold to KJC. The property deeded to Land Trust, described as "Lots 71 & 72—IMPROVEMENTS ONLY," was nonexistent. The court administrator's deed issued to KJC, consequently, transferred title to the land and the building in absolute fee simple subject only to those limitations imposed by law.[9]

■ Nor does it matter how taxes were assessed on the Property.[10] Under the Land Tax Collection Law for chartered first class counties, the assessment by the county does not control the title of real property sold at a foreclosure sale.[11] The Land Tax Collection Law contemplates only liens against, and sales of, the *whole* of the tract or parcel of real estate upon any interest in which taxes were assessed.[12] In section 141.550, for instance, a foreclosure sale "shall convey the whole interest of every person having or claiming any right, title or interest in or lien upon such real estate, whether such person has answered or not. . . ." In addition, Section

---

6. *Ott v. Pickard*, 361 Mo. 823, 237 S.W.2d 109, 111 (1951) (discussing interpretation of quitclaim deeds).

7. In addition to its claims against Land Trust, KJC's petition sought and the trial court issued a judgment terminating any claim of interest GBA might make to the "LAND ONLY" and declaring KJC the fee simple owner thereof. GBA was not a party to this appeal, neither Land Trust nor KJC appealed this particular judgment, and we need not address it.

8. *See Century Elec. Co. v. Terminal R.R. Assn. of St. Louis*, 426 S.W.2d 58, 60–61 (Mo.1968)

("There is no provision authorizing lessee to remove any building that he might erect during the life of the lease, and, therefore, the building which he erected became a part of the realty"); *see also* 35 Am.Jur.2d *Fixtures* sections 78 and 86 (1967).

9. *See, e.g.,* section 141.570.2.

10. *See supra,* note 2.

11. *See* sections 141.210—141.810.

12. *See, e.g.,* sections 141.240, .380, .500, .550, .560, & .570.

141.570, entitled "What title vests on sale," provides as follows:

"The title to any real estate which shall vest in any purchaser, upon confirmation of such sale by the court, *shall be an absolute estate in fee simple,* subject to rights-of-way thereon of public utilities on which tax has been otherwise paid, and subject to any lien thereon of the United States of America, if any, and all persons ... who may have had any right, title, interest, claim, or equity of redemption in or to, or lien upon such lands, shall be barred and forever foreclosed of all such right, title, interest, claim, lien or equity of redemption, and the court shall order immediate possession of such real estate be given to such purchaser...." [13]

And as this Court explained in *Modern Home Investment Company v. Boyle,* the "main objectives of the [Land Tax Collection Act (sections 141.210 through 141.810)] are summarily to foreclose on long standing tax delinquencies on real estate, and to convey a marketable title by judicial decree...." [14]

Once offered for sale, then the different parties claiming various interests in the tract or parcel are welcome to litigate to sort out their respective interests.[15] Here, title to the building and the land were governed by the Lease. Upon termination of the Lease, the building reattached and became part and parcel of Lots 71 & 72—LAND ONLY. The assessment by the county, whatever it may have been, did not affect this occurrence.

Furthermore, not only would a separate conveyance of the land and the building ignore the abandonment, forfeiture, and termination of the Lease and violate basic principles of landlord/tenant and property law, but also it would yield an undesirable result. Such a sale would have constituted selling the building as a piece of personal property located on, yet irremovable from land of another. It would not have been a sale of real property at all because a building conveyed without the land underneath is conveyed as personal property. Even the tax code considers "buildings" and "improvements" "[r]eal property" because they are *located on and attached to* the land.[16] Similarly, buildings usually are not "[t]angible personal property" because buildings usually "form[ ] part and parcel of real property." [17]

## IV

Accordingly, we reverse the judgment of the trial court denying KJC's petition to quiet title to and for possession of the building. We remand this case for further proceedings in accordance with this opinion, and order the trial court to enter judgment in favor of KJC declaring KJC the owner of Lots 71 & 72, land and improvements, in fee simple absolute.

All concur.

13. While Land Trust did not really purchase the "IMPROVEMENTS ONLY," it is considered the purchaser under 141.560.2 by being "deemed to have bid the full amount of the tax bill included in the judgment, interest, penalties, attorney's fees and costs then due...."

14. 358 Mo. 1149, 219 S.W.2d 346, 348 (1949).

15. *See, e.g.,* sections 141.400 & 141.420.

16. Section 137.010(3) (emphasis added) (other examples of real property include growing crops, structures, and fixtures).

17. Section 137.010(4).