126  355
142   94

126  355
s148 547
148  567
148  580
126  355
152  496
d152 503
152  509

CORNWELL *et al.*, *Appellants*, v. ORTON *et al.**

Division Two, January 9, 1895.

1. **Fee Simple Estate:** REMAINDER. No remainder can be limited after an estate in fee simple.

2. **Equitable Estates:** LEGAL ESTATES. Equitable estates are alienable, devisable, descendible and are subject to the same rules in the construction of limitations of estates therein, as similar legal estates are.

3. **Property:** POWER OF DISPOSITION. The power to dispose of a thing as one pleases, necessarily carries with it a full property interest therein.

4. ———: ———: LIFE ESTATE: TESTATOR. Where an estate is given to one generally or indefinitely with a power of disposition, such transfer carries with it the fee and the only exception to the rule is where the testator, by express terms or by the clear intention of the whole instrument, gives to the first taker an estate for life only and annexes to it the power of disposal; in that case the devisee for life will not take an estate in fee, notwithstanding the distinct and naked gift of a power of disposition of the reversion.

5. **Equitable Estate:** EXECUTED DRY TRUST: FEE SIMPLE. A deed to a trustee whereby he covenants to allow the *cestui que trust* full enjoyment of the conveyed premises with all the profits, rents and proceeds thereof for her sole use and benefit, and, at the written request of the *cestui que trust*, to sell, mortgage, convey, lease or otherwise dispose of the premises and pay over the net issues or proceeds to said *cestui que trust* as she may direct, and at her death to convey the premises or proceeds in his hands, as she may by will or other writing appoint, and in default of such appointment that he will convey said premises to the husband of the *cestui que trust*, his heirs or assigns, creates an executed dry trust and vests in the *cestui que trust* an equitable estate in fee simple on which no remainder can be limited.

6. **Judgment:** PARTIES. A judgment is not binding on persons who were not parties to it.

---

* The case of *Cornwell v. Wulff* was on the same date reversed and remanded upon the authority of this case.

7. **Mortgage**: HUSBAND AND WIFE: SUBROGATION. A husband gave notes for the purchase price of land conveyed in trust for his wife, and these were secured by mortgage on the land, executed by both the husband and the wife. After the death of the wife, the husband, supposing that he owned the land and not merely a curtesy in it, paid off the mortgage executed in the lifetime of his wife with money raised on his own notes and mortgage. *Held,* that neither he nor those claiming under him were subrogated to the security of the original mortgage as against the wife's heirs.

8. **Curtesy**: EQUITABLE ESTATE. A husband is entitled to. curtesy in his deceased wife's equitable estate in fee simple.

*Appeal from St. Louis County Circuit Court.*—HON. W. W. EDWARDS, Judge.

REVERSED AND REMANDED.

*E. A. Peacock, S. L. Isbell* and *T. P. Bashaw* for appellants.

(1) Plaintiffs' first legal proposition is that the deed under which they claim, *i. e.,* the deed from Yeates and wife to Goodlett, trustee for Catherine Cornwell, vested the entire estate in the lands in Catherine Cornwell; and that effect can not be given to the so-called covenant of the trustee to convey to James Cornwell, should she die without making or directing some other disposition of the land. *Green v. Sutton,* 50 Mo. 186; *Tremmel v. Kleiboldt,* 75 Mo. 255. (2) That upon the death of Catherine Cornwell, December 25, 1860, the estate vested in her heirs, plaintiffs herein, subject to the intervening particular estate of James Cornwell as tenant by curtesy. *Tremmel v. Kleiboldt,* 75 Mo. 255, and cases cited; s. c., 6 Mo. App. 549. (3) And, upon the death of James Cornwell, December 25, 1889, plaintiffs' right of action accrued. (4) This was a simple or dry trust, because, although the trust is prescribed by the donor, yet it is

only what it would have been, if left to the construction of law, *i. e.*, *first*, to permit the *cestui que trust* to occupy and receive the rents and profits; *second*, to execute conveyances, or make such disposition of the estate as the *cestui que trust* may direct; and, *third*, to protect the title, the remaining covenant to convey to James Cornwell being of no effect. And being a simple trust, it was executed by the statute of uses. 1 Perry on Trusts [4 Ed.], secs. 520, 521. (5) But if the last proposition be not the law, it is certainly the rule in this state, that, where land is conveyed to a trustee for the sole and separate use of a married woman, upon the death of her husband, the use thus created becomes immediately executed in the wife, or, if she be dead, in her legal heirs. *Roberts v. Mosley*, 51 Mo. 282; s. c., 64 Mo. 507. (6) It is plain that plaintiffs are not bound by the decree of the St. Louis land court in *Cornwell v. Goodlett*, as they were not parties to the suit; and that James Cornwell acquired no interest in the lands under the deed from Goodlett, made under the decree, or against them.

*L. F. Parker* and *John W. McElhinney* for respondents.

(1) Defendants rightfully united in one answer their legal and equitable defenses. It is true, defenses must be consistent. But only such consistency is required, that the proof of one defense will not disprove the other. That the defendants made payment of incumbrances on the land and built permanent improvements thereon, believing that they had good title, does not disprove their title. 1 R. S. 1889, secs. 2050, 2051; *Cohn v. Lehman*, 93 Mo. 574; *McCormick v. Kaye*, 41 Mo. App. 263; *Nelson v. Brodhack*, 44 Mo. 596. (2) The plaintiffs have failed to show legal title in

themselves. The deed to Goodlett as trustee did not convey to Mrs. Cornwell a fee simple estate. The covenant of the trustee to convey to Cornwell after her decease was not void, but was effectual to convey the remainder over to Cornwell, either upon the performance of the covenant by the trustee or by operation of the statute of uses. The legal effect of the deed was to convey to Mrs. Cornwell a life estate with a power of disposition in fee. *Straat v. Uhrig*, 56 Mo. 582; *Harbison v. James*, 90 Mo. 411; *Lewis v. Pitman*, 101 Mo. 281; *Redman v. Barger*, 24 S. W. Rep. 177; *Smith v. Bell*, 6 Pet. (U. S.) 68; *Carr v. Dings*, 58 Mo. 400; *Chiles v. Bartleson*, 21 Mo. 344; *Cook v. Couch*, 100 Mo. 29. (3) It is a mistake to suppose that the estate conveyed to Goodlett was a mere dry trust executed at once by the statute of uses. The trust was an active one, with duties to be performed by the trustee with reference to the property. The "almost universal rule" is that a conveyance to a trustee to enable a married woman to have the separate use and control of property, is construed as creating a trust, which does not become an executed use until the coverture ceases. And if the trustee still has active duties to perform, the trust may thereafter continue. *Roberts v. Moseley*, 51 Mo. 282; *Baker v. Nall*, 59 Mo. 265; *Pitts v. Sheriff*, 108 Mo. 110: 2 Washburn on Real Prop. [4 Ed.], *168, 169. (4) In case the title of plaintiffs should be held good at law, the defendants have a good equitable defense. Before the plaintiffs can recover, they must reimburse defendants for payments made by them and the persons under whom they hold, upon the old deed of trust and for improvements and taxes. *Valle's Heirs v. Fleming's Heirs*, 29 Mo. 152; *Jones v. Manly*, 58 Mo. 559; *McLean v. Martin*, 45 Mo. 393; *Shroyer v. Nickell*, 55 Mo. 264; *Schafer v. Causey*, 76 Mo. 365; *Henry v. McKerlie*, 78 Mo. 416. (5) Although

purchase of real estate by husband but taking title in his wife's name is presumed to be a settlement on her, rather than a resulting trust for the husband, yet such presumption is only a *prima facie* one. *Price v. Kane,* 112 Mo. 412; *Hall v. Hall,* 107 Mo. 110.

GANTT, P. J.—This was an action of ejectment commenced in the circuit court of St. Louis county, by the heirs at law of Mrs. Catherine Cornwell, deceased, for eighteen and eighty-four one hundredths acres of land, the south part of lot number 3 of a survey and subdivision of the west half of the northwest quarter of section 12, township 44, range 5 east, made by Isaac Woods, surveyor, which said lot 3 contains twenty-eight and eighty-four one hundredths acres, and is described by metes and bounds in a deed from Robert N. Yeats and wife to John A. Goodlett, trustee for Catherine Cornwell, of date October 15, 1859, and recorded in the office of the recorder of deeds of the city, then county, of St. Louis, in volume 241, page 297. The ouster is laid as of January 2, 1890. Damages and rents and profits are also asked.

The answer admits possession and denies all the averments of the petition. For further answer defendants alleged title in fee simple in Mrs. Etta B. Orton. And for further answer, that on October 15, 1859, the said real estate in plaintiff's petition described, was owned by and in possession of one Robert A. Yeats. That being so, the owner thereof, said Robert A. Yeats, by his deed of conveyance of that date, in which his wife lawfully joined, bargained, sold and conveyed the same, with other property, to one John A. Goodlett, for a recited consideration of thirty-one hundred and seventy-two and forty hundredths dollars, which sum said deed recited was paid to said Yeats by said John A. Goodlett. That said conveyance was

made to said Goodlett "to have and to hold the same, with all the rights, privileges and appurtenances thereto, belonging or in anywise appertaining unto him, the said John A. Goodlett, his heirs and assigns, forever," in trust for certain purposes and uses more specifically set forth in certain convenants of said John A. Goodlett, included and contained; that is to say, the said John A. Goodlett, by said deed, covenanted and agreed that he would suffer and permit Catherine Cornwell, without let or molestation, to have, hold, use and enjoy the aforesaid premises, with all the rents, issues, profits and proceeds arising therefrom, whether from sale or lease, for her own sole use and benefit, separate and apart from her husband, James Cornwell, and wholly free from his control or interference and from his debts in such manner as she might think proper; and that he would, at any and all times thereafter, at the request and direction of the said Catherine Cornwell, expressed in writing signed by her, or by her authority, bargain, sell, mortgage, convey, lease, rent or otherwise dispose of said premises, or any part thereof, and would pay over the rents, issues, profits and proceeds thereof, which might come into his hands, and not otherwise liable, to her, the said Catherine Cornwell, in such manner as she should, in writing, direct or request, and that he would, at the death of said Catherine Cornwell, convey or dispose of the said premises, or such part thereof as might then be held by him under said deed, and all profits and proceeds thereof, in such manner, to such person or persons and at such time or times as said Catherine Cornwell should, by her last will and testament, or by any other writing signed by her or by her authority, direct or appoint, and in default of such appointment, then that he would convey said premises to said James Cornwell, his heirs or assigns. That it was the inten-

tion of all parties to said deed to thereby vest a life estate in said Catherine Cornwell, with power of disposition, and to vest in said James Cornwell a remainder over in case of failure on the part of Catherine Cornwell to dispose of the same.

It is also charged that Mrs. Cornwell did not pay any of the purchase money for said lands, but that her husband paid it all; that after her death, Goodlett, the trustee, under a mandate of the St. Louis land court, executed and delivered a deed to said James Cornwell, conveying all of said lands to said James Cornwell and his heirs. The title is traced through various mortgages and deeds of trust executed by James Cornwell down to Mrs. Orton. There is also a plea of valuable improvements made by Halle, one of the purchasers. The answer prays for a decree for title in Mrs. Orton and for general relief. A reply denying all new matter was filed in due time.

A jury was waived and the cause was tried to the court on March 28, 1892.

Robert A. Yeats was the common source of title. The plaintiff read in evidence a deed from Robert Yeats and wife of date October 15, 1859, to John A. Goodlett, trustee for Catherine Cornwell, recorded in book 241, page 297, office of recorder of deeds in the city of St. Louis, conveying to said trustee, said lot 3, of twenty-eight and eighty-four one hundredth acres, "to have and to hold the same with all rights and appurtenances thereto belonging to him and his heirs and assigns forever. * * * In trust, however, to and for the sole and separate use, benefit and behoof of the said Catherine Cornwell, wife of said James Cornwell, and the said John A. Goodlett, party of the second part, hereby covenants and agrees to and with the said Catherine Cornwell, that he will suffer and permit her without let or molestation, to have, hold, use,

occupy and enjoy the aforesaid premises, with all the rents, issues and profits and proceeds arising therefrom, whether from sale or lease, for her own sole use and benefit, separate and apart from her said husband, and wholly free from his control or interference, and from his debts, in such manner as she may think proper, and that he will, at any and all times hereafter, at the request and direction of the said Catherine Cornwell, expressed in writing, signed by her, or by her authority, bargain, sell, mortgage, convey, lease, rent or otherwise dispose of said premises, or any part thereof, and will pay over the rents, issues, profits and proceeds thereof which may come into his hands and not otherwise liable, to her, the said Catherine Cornwell, in such manner as she shall in writing direct or request, and that he will, at the death of the said Catherine Cornwell, convey or dispose of the said premises, or such part thereof as may then be held by him under this deed, and all profits and proceeds thereof, in such manner, to such person or persons, and at such time or times as the said Catherine Cornwell shall, by her last will and testament, or any other writing signed by her, or by her authority, direct or appoint; *and in default of such appointment, then that he will convey said premises to the said James Cornwell, his heirs or assigns*, and the said Robert A. Yeats, party of the first part, hereby covenants that he and his heirs, executors and administrators, will warrant and defend the title to said premises and every part thereof, to him, the said party of the second part, and his heirs and assigns, against the lawful claim or claims of all and every person or persons whomsoever, claiming or to claim the same or any part thereof."

Mrs. Cornwell made no disposition of the land during her life, either by deed or will or other appointment. She died on the twenty-fourth or twenty-fifth of December, 1860. Her husband died December 25,

1889. The plaintiffs are all of her children and grandchildren. It was admitted that defendants were, at the commencement of the suit, and now are, in possession of the lands. Plaintiffs offered evidence as to value of rents, and rested.

Defendants offered and read in evidence a deed of trust from Catherine Cornwell and James Cornwell, her husband, and her trustee, John A. Goodlett, to Robert A. Yeats' trustee, Josiah G. McClellan, dated October 15, 1859, conveying the real estate in question, to secure the payment of three promissory notes for $793.10 each, with six per cent. interest from date executed by James Cornwell and payable to said Yeats or order, one, two and three years from date, respectively; with release on the margin by Trusten Polk, dated March 5, 1870.

Defendants also offered and read in evidence deed of release from the said Josiah G. McClellan, trustee, and Joseph Sale, owner of the notes above mentioned, dated June 30, 1867, releasing the north ten acres of the tract, from the lien of the last above named deed of trust, in consideration of the payment of $1,000 thereon.

Defendants offered and read in evidence, petition and answer and the decree of the St. Louis land court, at the March term, 1862, in the case of James Cornwell v. John A. Goodlett, said decree directing said Goodlett, as trustee in the deed to Catherine Cornwell from Yeats and wife, read in evidence by plaintiff, to convey the lands therein described to James Cornwell.

Defendants then offered to read in evidence the deed made by John A. Goodlett, trustee, etc., to James Cornwell, dated May 21, 1862, under the decree, last above referred to, conveying to him, "all the estate, right, title, interest, property, claim and demand of said Goodlett as trustee."

Defendants also read in evidence a deed of trust

from James Cornwell to William Hoffman's trustee, dated February 28, 1870, for $3,000, with release on the margin by Bernard J. Reilly, holder of the note, dated May 24, 1873, upon the land in controversy.

Defendants also offered and read in evidence deed of trust from James Cornwell to James Clements' trustee, Bernard J. Reilly, dated May 7, 1873, to secure the payment of Cornwell's note to Clements for $3,000, two years from date, together with four interest notes for $150 each, due in six, twelve, eighteen and twenty-four months each, upon the real estate in controversy, and giving the usual power of sale upon default, and to make deed, etc.

Also trustee's deed by Bernard J. Reilly, above named trustee, conveying said real estate to Christian Halle, after alleged default, advertisement and sale under said deed of trust, dated December 1, 1880, for the consideration of $1,000.

Also the general warranty deed of said Christian Halle, dated April 15, 1885, conveying said real estate to defendant, Etta B. Orton, for a consideration of $3,300.

All of which conveyances were duly recorded.

There was evidence also showing that the notes secured by the deed of trust to McClellan, trustee for Yeats, were assigned to ex-Governor Polk; that money was borrowed by James Cornwell, of Hoffman, to satisfy Governor Polk's notes, and when Hoffman's notes fell due a new loan was made of Halle to satisfy them. Halle's deed of trust was foreclosed and he purchased the land and afterward conveyed it by warranty deed to Mrs. Orton.

In rebuttal plaintiffs proved by Ephriam Stannus that he had lived in the vicinity of the property for thirty years. He knew Mr. and Mrs. Cornwell both for a long time. He heard Mr. Cornwell state at the

time of the sale of the ten acres to Garriott, that Mrs. Cornwell's mother purchased the property for her.

The court found for defendants, and plaintiffs appeal. No instructions were asked or given. The grounds for new trial were that the answer set up no equitable defense or basis for any evidence, whatever, and that the court erred in admitting irrelevant and incompetent evidence and that upon the undisputed facts the verdict should have been for plaintiffs.

I. The rights of the several parties depend upon the construction to be given the deed from Yeats and wife to Goodlett as trustee for Mrs. Cornwell. The plaintiffs assert that this deed vested the fee simple estate in these lands in Mrs. Catherine Cornwell and that no effect can be given to the covenant of the trustee Goodlett to convey to James Cornwell, should Mrs. Cornwell die without making a will or directing some other disposition of the land, whereas defendants claim that the true construction of the deed is that it conveyed a life estate only to Mrs. Cornwell with power to convey the fee in remainder to her husband, if she failed to exercise her right. To enable us to arrive at a proper determination of this difference, certain cardinal principles which we have no right to disregard must be kept in mind.

In the very nature of things no remainder can be limited after a fee simple. A grant of the fee simple conveys the whole and there can remain no remnant for disposition. 2 Blackstone's Com., 164; 1 Fearne on Remainders [4 Am. Ed.], 12; 2 Thomas' Coke on Littleton, 126 and note (B); *Green v. Sutton*, 50 Mo. 183.

Again, the doctrine of courts of equity is that equitable estates are considered to all intents and purposes as legal estates. In the construction of the limitations of a trust, courts of equity follow the rules of law applicable to legal estates. The *cestui que trust*,

or beneficiary, takes the same estate in duration as in a legal estate, and the estate granted is subject to the same incidents, properties and consequences as belong to similar estates at law. They are alienable, devisable and descendible in the same manner. They are alike subject to dower and curtesy. It is true at one time a widow was not dowable of a trust estate but both in England and in this country a widow is now dowable in an equitable estate. As to curtesy, actual possession of the estate or the receipt of the rents, issues, and profits by the wife or possession by her trustee for her benefit is equivalent to legal seizin. These principles are elementary. 1 Perry on Trusts, sec. 324; Lewin on Trusts, *622; 2 Story's Eq. Juris. [13 Ed.], sec. 974; 2 Coke on Littleton, 290*b;* Butler & Hargrave's note 16; *Cushing v. Blake,* 30 N. J. Eq. 689; *Tremmel v. Kleiboldt,* 75 Mo. 255.

It is well, perhaps, to note that a distinction is made between trusts executory and trusts executed. Says the author of Perry on Trusts (Vol. 1, sec. 359): "All trusts are *executory* in one sense of the word; that is, the trustee must have some duty, either active or passive, to perform, so that the statute of uses shall not execute the estate in the *cestui que trust,* and leave nothing in the trustee. But such is not the meaning of judges when they speak of *executed* trusts and *executory* trusts. These words refer rather to the manner and perfection of their creation than to the action of the trustee in administering the property. Thus a trust created by a deed or will, so clear and certain in all its terms and limitations that a trustee has nothing to do but to carry out all the provisions of the instrument according to its letter, is called an *executed* trust. In these trusts, technical words receive their legal meaning, and the rules applicable to legal estates govern the equitable estates thus created." And when property is

vested in one person in trust of another and the nature of the trust is not prescribed by the donor but left to the construction of the law, it is denominated a dry or simple trust.    In such a case, the beneficiary is entitled to the possession and enjoyment of the property and has the right to alien or charge it as he or she pleases, and to call upon the trustee to execute such conveyances of the legal estate as he or she may direct.

There are also well established rules of construction, in ascertaining whether the estate granted to the first taker is an absolute fee simple, or only an estate for life.    "It has always been held that an absolute power of disposition over property conferred by will, not controlled by any provision or limitation, amounted to an absolute gift of the property.    A power to dispose of a thing as one pleases, must necessarily carry along with it a full property in it."    *Rubey v. Barnett*, 12 Mo. 5; *Norcum v. D'Oench*, 17 Mo. 98; *Green v. Sutton*, 50 Mo. 186; *Tremmel v. Kleiboldt*, 75 Mo. 255.

After a most careful consideration, the court of appeals of New York, in *Jackson v. Robins*, 16 Johns. 587, said:    "We may lay it down as an incontrovertible rule, that where an estate is given to a person generally, or indefinitely, with a power of disposition, it carries a fee; and the only exception to the rule is, where the testator gives to the first taker an estate for life *only*, by certain and express words, and annexes to it a power of disposal.    In that particular and special case, the devisee for life will not take an estate in fee, notwithstanding the distinct and naked gift of a power of disposition of the reversion.    This distinction is carefully marked and settled in the cases."    See, also, *Pulliam v. Byrd*, 2 Strob. Eq. 142.

*Jackson v. Robins*, was cited and approved by this court in *Rubey v. Barnett*, and *Green v. Sutton*, *supra*, and the distinction therein made has never been ques-

tioned, save to the extent that, whereas in *Jackson v. Robins*, it was said that, "where the testator gives to the first taker an estate for life only by *certain and express words*," an estate in fee does not pass, this court in *Lewis v. Pitman*, 101 Mo. 281, held that it was not necessary that the life estate should be created in *express terms*, saying: "If it is the clear intention from the whole will that the first taker is to have but a life estate, then the added power of disposition will not convert the estate into one of absolute ownership." And see, also, *Munro v. Collins*, 95 Mo. 33; *Harbison v. James*, 90 Mo. 411; *Redman v. Barger*, 118 Mo. 568.

So that in no case in this state do we find the integrity of the rule shaken, save as to the words used in creating the life estate. Thus BRACE, J., in commenting upon *Wead v. Gray*, 78 Mo. 59, in *Munro v. Collins*, *supra*, page 39, said: "Although the testatrix contemplated that the devisee might not exercise the absolute power which she gave her over all the property devised to her, yet in terms, having made her its absolute owner, her power over her property could not be limited by a provision inconsistent with absolute ownership." *Wead v. Gray*, 78 Mo. 59; *State ex rel. v. Tolson*, 73 Mo. 320.

In this latter case, the provision in the will was: "I give, bequeath and devise unto my beloved niece, M. S. P., all my estate not hereinbefore devised. * * * To have, hold and enjoy to the only proper use and behoof of the said M. S. P. and her heirs forever. The true intent and meaning of this devise, is to give to the said M. S. P. all my estate, real, personal and mixed * * *; provided, however, that is my will and desire, that, if the said M. S. P. shall die without issue, then, in such event, the estate herein devised to her shall descend and go to W. and N." This court held the limitation

over void for repugnancy.    It was an attempt to limit a remainder upon a fee.

The cases will be found instructive, as showing that while the rule is settled, each case called for a construction by the court as to its application, but in each case it was conceded that, when the intention to create a life estate only in the first taker did not appear, either by express words, or by the clear intention from the whole instrument and the words were appropriate to convey an absolute estate to the first taker, the limitation over, by remainder or otherwise, was void.

With these principles of law and decisions before us, let us examine this deed and see if a life estate is created, either by express words or by necessary implication from the terms of the deed, gathered from "all of its corners."    There are no words expressly creating a life estate, and, omitting, for the present, the limitation over to the husband, certainly there can not be found in the adjudicated cases, a more absolute, and unrestricted power of disposal in a first grantee or taker, than was conferred upon Mrs. Cornwell, and the trust was clearly an executed dry trust.    The duties devolved upon the trustee Goodlett were such, and such only, as the law would place upon him in their absence.    In the devolution of estates equity follows the law, and we apprehend no court would have denied Mr. Cornwell, the husband, curtesy in these lands, upon the ground that the trust deed clearly granted an estate of inheritance, nor can there be a doubt, under the statute then in force, that, upon Mrs. Cornwell's death, the estate would have descended to her heirs. R. S. 1855, chap. 32, sec. 2, p. 355.

The rule in *Shelley's case* has been abolished in this state, and we have every disposition to effectuate the intention of grantors and devisors, but that rule required

the grant of a freehold less than one of inheritance for the particular estate.    Here no life estate is created but an absolute fee in the first taker, and, in such a case, the rule would not have applied.    It follows that we have a remainder limited after a fee simple absolute, and we have seen this can no more be done now than at common law.    The limitation over is inconsistent with, and repugnant to, the grant to Mrs. Cornwell.

Learned counsel labored to distinguish this case from *Green v. Sutton*, 50 Mo. 186, but, we think, failed to do so.    That case, in all essential features, is similar to this and has never been questioned.    It is in harmony with established principles of law, and we do not feel at liberty to weaken its force.    There ought not to be any vacillation in the matter of the passing of titles to real estate.

*Green v. Sutton* was followed in *Tremnel v. Kleiboldt*, 75 Mo. 255, in which the trust deed was identical with this deed, save that the trustee covenanted to convey to "the wife's heirs" instead of "her husband and his heirs," and in that case the husband asserted curtesy, and the heirs claimed that the limitation over created a life estate in the wife, remainder to them; but this court held the wife took a fee and the husband his curtesy, and the limitation over was void, a conclusion reached because by the terms of the deed the entire estate was vested in the wife, and no remainder was, or could be, created by the covenant of the trustee to convey the property to her legal heirs at her death in default of appointment by her during her life.    *Appleton v. Rowley*, L. R. 8, Eq. Cas. 137; *Cushing v. Blake*, 30 N. J. Eq. 689; *Stowell v. Hastings*, 59 Vt. 494.

II.    The judgment of the land court of St. Louis, directing Goodlett, the trustee, to convey the lands to James Cornwell, in no way estops the heirs of his wife. They were not parties to that mandate.

III.   It is insisted by defendants that, even though the legal title should be adjudged to plaintiffs, still, defendants have a good equitable defense, for subrogation to the rights of Yeats, because their grantors paid off the original deed of trust, which was binding on Mrs. Cornwell.

The notes secured by the mortgage or deed of trust were all executed by James Cornwell alone.   That deed of trust was never foreclosed.   After Mrs. Cornwell's death, James Cornwell borrowed other moneys on his own note and deed of trust on said lands and paid off the notes executed in the lifetime of his wife.   While the doctrine is well settled that when a third person, at the instance of a mortgagor or for his own protection, pays the mortgage debt, he becomes entitled to the mortgage and a court of equity will subrogate him to the rights of the mortgagee, it can not be applied here. Mrs. Cornwell was dead when the original deed of trust was satisfied by Governor Polk.   Neither she nor her heirs had anything to do with the payment of the note.

This case, so far as Reilly and Halle are concerned, is more analogous to the case of *Wooldridge v. Scott*, 69 Mo. 669, in which it was held that, one who lends money to pay off a note given for the purchase money of land is not entitled to be subrogated to the lien of the vendor, although the money so borrowed is applied to paying off the lien.   *Price v. Estill*, 87 Mo. 378; *Price v. Courtney*, 87 Mo. 387; *Norton v. Highleyman*, 88 Mo. 621.   Here, all the subsequent loans were evidently made to Mr. Cornwell on the strength of his ownership.   He clearly thought he had title in his own right.

IV.   As Mrs. Cornwell had an absolute estate in fee, Mr. Cornwell had his curtesy, and his grantees took that, during his life, and no rents were recoverable until after his death, December 25, 1889.

Barney v. The H. & St. J. R'y Co.

The claim for improvements must be preferred in the circuit court after the ejectment case is concluded. The statute points out the procedure.

The judgment is reversed and cause remanded for a new trial in accordance herewith. BURGESS and SHERWOOD, JJ., concur.