ELSIE KREBS, ERNEST L. KREBS and BLANCHE KREBS v. GRACE BEZLER, ARTHUR BEZLER, MAE WREN, D. O. WREN, WALTER KREBS, MAY KREBS, ZEDWICK KREBS, MARY KREBS and MARIE KREBS, Appellants.—89 S. W. (2d) 935.

Division One, January 11, 1936.

*Cave & Hulen* for appellants.

*Baker & Baker* for respondents.

FRANK, J.—Action in equity whereby respondents, plaintiffs below, sought to be subrogated to the rights of the original holders of certain notes secured by deeds of trust on the lands described in the petition. The decree below was in favor of plaintiff, Elsie Krebs, and against plaintiffs, Ernest L. and Blanche Krebs. Defendants appealed. The losing plaintiffs did not appeal.

The facts are as follows:

On March 27, 1927, one Gottlieb Krebs died testate in Callaway County, Missouri, seized of two separate tracts of land located in said county, together with certain personal property. Deceased left surviving him as his only heirs his widow, Elsie Krebs, and six children, namely: Grace Bezler, Mae Wren, Walter Krebs, Zedwick Krebs, Ernest L. Krebs and Marie Krebs.

The plaintiffs in this action are Elsie Krebs, the widow, and one son, Ernest L. Krebs, and his wife, Blanche. The defendants are the other five children together with the husbands and wives of such as are married. Both tracts of land left by Gottlieb Krebs were encumbered, one for $7500, the other for $15,000. The notes and deeds of trust representing such encumbrances were executed by said Gottlieb Krebs and his wife Elsie Krebs.

Both parties tried the case below, and present it here, on the theory that the will of Gottlieb Krebs gave his widow, Elsie Krebs, a life estate in the real estate, subject to be defeated by her remarriage. We will, therefore, determine the case on that theory without construing the will. The widow has not remarried. The will was duly admitted to probate, and the widow, Elsie Krebs was duly appointed and qualified as executrix of the estate. The record shows that after the death of Gottlieb Krebs the widow paid the two encumbrances on the land in full. In paying the $7500 encumbrance she used $5242.36 of the assets of the estate and took credit for that amount in her final settlement as executrix. She paid the balance of the $7500 encumbrance and all of the $15,000 encumbrance out of her own funds and funds she borrowed from her son Ernest L. Krebs and his wife Blanche.

The petition is in two counts. In the first count the widow seeks to be subrogated to the rights of the original holder of the $15,000 note and deed of trust securing it. In the second count she seeks the same relief as to the $7500 note and deed of trust securing it.

Other necessary facts will be stated in connection with questions discussed.

Appellants contend first that as the widow signed both notes as maker, she became primarily liable thereon and, is not entitled to subrogation upon the payment of her own debt.

The record shows that she did not receive any of the proceeds of either of the notes. Her husband received all of the money represented by the notes, paid it on the purchase price of the land, and took title to the land in his own name. She had no interest in the land except her inchoate right of dower, which was but a chance to acquire an interest in event she outlived her husband. As between her and the holder of the notes she would be regarded as a maker and primarily liable thereon, but as between her and her husband, or between her and the heirs who claim under the husband, she was a surety on the note and only secondarily liable thereon. It follows, therefore, that when she paid the notes, she paid the debts of her husband and not her own debts.

Appellants next contend that if the widow was only secondarily liable on the notes, then her cause of action is barred by the five-year Statute of Limitations because this suit was not brought within five years from the date she paid the notes.

The five-year Statute of Limitations is Section 862, Revised Statutes 1929. The section reads as follows:

"Within five years: First, all actions upon contracts, obligations or liabilities, express or implied, except those mentioned in Section 861, and except upon judgments or decrees of a court of record, and except where a different time is herein limited; second, an action upon a liability created by a statute other than a penalty or forfeiture; third, an action for trespass on real estate; fourth, an action for taking, detaining or injuring any goods or chattels, including actions for the recovery of specific personal property, or for any other injury to the person or rights of another, not arising on contract and not herein otherwise enumerated; fifth, an action for relief on the ground of fraud, the cause of action in such case to be deemed not to have accrued until the discovery by the aggrieved party, at any time within ten years, of the facts constituting the fraud."

The courts hold that when one becomes surety for another, there is an implied promise on the part of the principal to reimburse the surety for any amount he is compelled to pay by reason of such suretyship. Therefore, when a surety is required to and pays his principal's debt, his cause of action for reimbursement is based on the implied promise of the principal to reimburse him, and for that reason it comes within the first clause of above statute which provides that "all actions upon contracts, obligations or liabilities express or implied" must be brought within five years from the date the cause of action accrues. Speaking to this question in Burrus v. Cook, 215 Mo. 496, 511, 114 S. W. 1065, we said:

"When the question is looked at from the standpoint of the surety's right of action, it is quite a plain one. His right of action, as a matter of course, is the foundation upon which he must recover. His

right to subrogation is merely an aid to his right of action. His right of action is not based on an actual contract or promise of the principal debtor, or his cosurety, for none has been made. It is based on an implied promise, which the law raises up from principles of natural justice and right, that is, a promise which the law implies has been made to him when he became surety that he, the principal, will reimburse him for what he may have to pay, or, in case of a cosurety, for what he pays over his proportion, by reason of his suretyship. His right to subrogation is only one of the means of obtaining reimbursement. It is an incident to his main right. Without such obligation, there would not, of course, be a right to subrogation. So when the obligation is no longer effective, the right to subrogation is destroyed. The statute reads that it shall not be an effective obligation unless asserted within five years. And this is true whether the right of the surety arises from an implied contract, or from natural justice and equity.''

Payment of the $7500 note and $8000 of the $15,000 note was made more than five years before the present suit was instituted. It follows, therefore, that if the widow's right to subrogation was based upon the implied promise of her husband to reimburse her for any amount that she, as surety on the notes, was compelled to pay, her cause of action for reimbursement or subrogation would be barred because not brought within five years from the date she made such payments. But her cause of action is not necessarily based upon the implied promise of her husband. She has a right to subrogation independent of such implied promise. During the lifetime of her husband she was a mere surety on the notes, without any interest in the lands upon which the notes were secured. Had she been compelled to pay the notes during her husband's lifetime, that would have been the payment of the principal's debt by a surety, and her cause of action for reimbursement, under such circumstances, would have been barred after five years from the date she paid the notes. The death of the husband changed the situation. Upon his death, she acquired a life estate in the lands under his will. When she, as life tenant, paid the notes to protect her life estate and the interest of the remaindermen, that fact, independent of and apart from the fact that she happened to be surety on the notes, gave her a right to reimbursement and subrogation. Speaking to that question in Gates v. Rice, 320 Mo. 580, 8 S. W. (2d) 614, 616, we said:

''The duty of a life tenant to preserve the estate includes the obligation to keep down the interest upon existing incumbrances, but he is not compelled to pay off the principal sum when it becomes due or thereafter, and it is a general rule that a life tenant, who in order to preserve the estate pays off an incumbrance upon the fee, is entitled to reimbursement or contribution from the reversioners.

or remaindermen to the extent of their interest in the land; by paying off the incumbrance the tenant acquires a lien on the reversionary interest or is subrogated to the rights of the incumbrancer.''

Upon the date the widow paid the notes, a right to reimbursement and subrogation accrued to her for two reasons, (1) she, as surety on the notes was compelled to pay them, and (2) her payment of the notes to protect and preserve her life estate and the estate of the remaindermen in the land. She would have been entitled to reimbursement and subrogation for the second reason if her name had not been on the note, but the fact that her name was on the note did not destroy her right to subrogation for the second reason. Conceding that her right to subrogation on the ground that she, as surety on the notes, was compelled to pay them, was barred by the five-year Statute of Limitations, was her right to subrogation on the ground that she was compelled to pay the notes to preserve the estate, also barred by the five-year Statute of Limitations? We think not. Only the first clause and the latter part of the fourth clause of Section 862, Revised Statutes 1929, could possibly have any application to this case. The first clause provides that ''all actions upon contracts, obligations or liabilities, express or implied. . . .'' shall be brought within five years from the date of the accrual of such cause of action. The remaindermen did not sign the notes. They were not personally liable thereon. It was not shown that they or either of them promised to reimburse the widow for any sum she paid on the notes. It might be that they did not think the land was worth the encumbrance and for that reason did not offer to pay any part of the notes or agree to reimburse the widow in event she paid them. The remaindermen took their interest in the land subject to encumbrances existing thereon at the date of their father's death. They had a lawful right to pay such encumbrances or let the lands be sold thereunder. The law will not compel them to do either. To hold there was an implied promise on the part of the remaindermen to reimburse the widow for the amount she paid to discharge the encumbrances would compel them to pay such encumbrances, a thing they had a lawful right to refuse to do without incurring liability to anyone. It is clear that the widow's action is not and could not be based on an express or implied contract for reimbursement because no such contract existed. It follows, therefore, that her action is not barred by the first clause of the five-year Statute of Limitations which provides that actions on express or implied contracts are barred unless brought within five years from the date such cause of action accrues. The fourth clause of Section 862, Revised Statutes 1929, provides that all actions ''for any other injury to the person or rights of another, not arising on contract . . .'' are barred unless brought within five years from the date such causes of action accrue. The widow's action is not based on an

injury to her rights, because the remaindermen could not injure her rights by failing to pay encumbrances which they did not owe. For this reason·her action is not barred by the fourth clause of the five-year Statute of Limitations.

· The widow has no cause of action against the remaindermen upon which she could recover a personal judgment. Neither does she ask a money judgment. She asks a lien on the land for the amount of the encumbrances which she was compelled to pay to preserve the estate. Otherwise stated, she asks to be subrogated to the rights and remedies of the holders of the encumbrances which she paid. The doctrine of subrogation is the substitution of one creditor in the place of another. It is not founded upon contract, express or implied. "It is a creature of the courts of equity, invented and applied by them to do justice or prevent an injustice being done in a particular case, and under a particular state of facts where the law is powerless in the premises." Equal justice and equity demand that the doctrine be applied to the facts of this case. The widow's payment of the encumbrances on the two tracts of land protected the estate of the remaindermen in the lands as well as her own life estate. It would be unjust and unfair to permit the remaindermen to take the land freed from the encumbrances at the expense of the widow. Since she cannot, in an action at law, recover from the remaindermen any part of the encumbrance which she was compelled to pay, equity steps in and subrogates her to the rights and remedies of the encumbrancers by giving her a lien, on the land for the amount of the encumbrances which she paid, thereby doing equal and exact justice by making the widow whole, and giving to the remaindermen exactly what they took from their father—a remainder interest in the land subject to the encumbrances.

Appellants' final contention is that since the widow used $5242.35 of the assets of the estate in paying the $7500 note, she is not entitled to reimbursement for that payment.

The widow had a life estate in the personal property. To give her a lien on the real estate for the $5242.35 payment made out of the personal assets of the estate would give her an absolute title to that amount of the personal estate contrary to the provisions of the will. For the reason stated, subrogation as to the amount of this payment should have been denied. However, since the balance of the $7500 note amounting to $2257.65, and the entire amount of the $15,000 was paid by the widow out of her own funds, she is entitled to be subrogated to the rights of the original mortgagees for these two latter amounts.

The decree is reversed and cause remanded with directions to the ·court below to set aside its decree and enter a new decree in conformity with this opinion. All concur.