NELLIE C. TUCKER, Respondent, v. HENRY HOLDER and STELLA HOLDER, F. D. GARNER, as Trustee, DANA M. CLARK and EFFIE HENDRIX, Appellants, JOHN FARMER, JR., JESSE FARMER, RAY FARMER, CLARA FARMER and MAE ADAIR, Intervenors, Appellants, No. 41250—225 S. W. (2d) 123.

Division Two, December 12, 1949.

*E. A. Farris* and *O. J. Adams* for appellants; *Lawson, Hale & Coleberd* for intervenors.

*Stephen J. Millett, Wilder Lintner* and *Kitt & Lintner* for respondent.

1042

■■■ BARRETT, C.—In 1946 Nellie C. Tucker, then sixty-five years old and the daughter of James H. and Mary E. Hendrix, as one of "the heirs of the bodies of grantees by their marriage" under a warranty deed executed in 1923 instituted this action to quiet title, [124] for recovery of possession and damages and to partition 130 acres of land in Ray County. The defendants, Henry and Stella Holder, have been in possession of the farm since 1942 through intermediate conveyances from James and Mary Hendrix beginning in 1924. F. D. Garner is the trustee and Dana M. Clark is the beneficiary of a deed of trust executed by the Holders in 1944. The defendant, Effie Hendrix, is Mrs. Tucker's sister-in-law and as the wife of Mrs. Tucker's deceased brother, Martin L. Hendrix, is the inheritor of a one-fourth interest in the farm as the other "heirs of the bodies of grantees by their marriage." The six sons and daughters of John Farmer, who was the intervening possessor and the Holder's vendor, intervened in the suit and sought to assert and maintain a fee simple title in their father and his grantees, the Holders. Effie Hendrix deeded her interest in the land to the Holders and filed a disclaimer of any interest in it. The trial court found that Mrs. Tucker was and had been the owner in fee of a three-fourths interest in the land since the death of her father and that the Holders as the grantees of Effie Hendrix were the owners of a one-fourth interest and, accordingly, the court found that Mrs. Tucker was entitled

to three-fourths possession and three-fourths of the rents and profits from September 27, 1946, and to partition. The Holders and the intervenors appeal from the judgment.

The controversy arose in these facts and circumstances: In 1923 Mary E. Hendrix owned, as her sole and separate property, the 130 acre farm near Georgeville in Ray County, subject to a deed of trust which she and her husband had executed in 1921 to secure a note in the sum of $4,500.00, payable to the Bankers Life Insurance Company of Nebraska. On the 13th day of June, 1923, Mrs. Hendrix and her husband and their son, Martin L. Hendrix, and his wife, Effie, of near Cowgill in Caldwell County, and perhaps Mrs. Tucker, went to the office of a lawyer in Chillicothe and Mrs. Hendrix deeded, for the consideration of one dollar, her farm to her son, Martin. On the same day, in consideration of one dollar, the son, Martin L. Hendrix, and his wife, Effie, by warranty deed reconveyed the land to "James H. Hendrix and Mary E. Hendrix husband and wife." The original deed is a printed form, "general warranty deed." The scrivener filled in all the blank spaces and in the granting and habendum clauses inserted the words "the heirs of the bodies of grantees by their marriage." On April 16, 1924, in consideration of $11,700.00, James and Mary Hendrix by general warranty deed, including covenants of fee simple ownership, conveyed the land to John Farmer. The deed recited that "The above real estate is deeded subject to a deed of trust for $4,500.00 held by the Bankers Life of Nebraska, and which second party assumes and agrees to pay." Mr. Farmer paid the full consideration of $11,700.00 which included the $4,500.00 deed of trust. The deed of trust was released in April 1925. In February 1930, for a recited consideration of $9,800.00, Farmer and his wife again reconveyed the land to James H. and Mary E. Hendrix by warranty deed and on the same day Mr. and Mrs. Hendrix executed a deed of trust, to secure $7,331.84, in which Farmer was the beneficiary. On January 22, 1931, for the recited consideration of $7,000.00, Mr. and Mrs. Hendrix, by warranty deed reconveyed the land to Farmer and in March 1942 Farmer, in consideration of $2,000.00, conveyed the land by warranty deed to Henry and Stella Holder.

 All the witnesses testified that by the time the land was conveyed to the Holders it had been "farmed to death," the soil had been exhausted, the fences were all down and the house and barn had deteriorated to the point that it had no rental value as a farm. The Holders have improved the buildings, rebuilt the fences and now have the farm in grass and it again has a rental value. The Holders discovered the condition of their title in 1946 when they were about to sell the farm for $6,500.00. Mrs. Tucker became aware of her interest in the land when a friend of Mr. Holder's asked her to sign a quitclaim deed, probably for $200.00. Mrs. Tucker's

mother, Mrs. Hendrix, died in 1937 and her father, James E. Hendrix, died in 1940.

The Holders and the Farmers claim that the conveyances in 1923 from Mrs. Hendrix to her son Martin and from her son to Mr. and Mrs. Hendrix were for the sole purpose of creating a tenancy by the entirety in them. They offered to prove by Effie Hendrix that that was the sole purpose of the transfers. They claim that everyone who dealt with the land did so on the assumption that James H. and Mary E. Hendrix had and conveyed a fee simple title to Farmer and that Farmer likewise conveyed a fee simple title to the Holders. They claim that all the parties, including Mrs. Tucker, by her silence, have acquiesced in that interpretation of the conveyances and that Mrs. Tucker is now estopped to assert otherwise. But, in the eye of the law, the words "the heirs of the bodies of grantees by their marriage" have acquired a definite meaning and that meaning must prevail unless a contrary intention and meaning can be found in the instrument. Owen v. Trail, 302 Mo. 292, 258 S. W. 699. The conveyance to James H. and Mary E. Hendrix and "the heirs of the bodies of grantees by their marriage" created a life estate in the grantees and a remainder in fee in their heirs determinative upon the death of the surviving husband in 1940 (Brown v. Bibb, 356 Mo. 148, 201 S. W. (2) 370; Kane v. Roath, 310 Mo. 684, 276 S. W. 39) and there is no room for the application of auxiliary rules of construction or the admission of extrinsic evidence. Williams v. Reid, (Mo.) 37 S. W. (2) 537. The deed, executed in June 1923, has been upon the records since October 1923 and all subsequent purchasers are chargeable with notice of its limitations. McDonald v. Quick, 139 Mo. 484, 498, 41 S. W. 208. Mrs. Tucker says that she had no knowledge of her interest in the property until in 1946 and her mere silence could not estop her from asserting that interest. Prouse v. Schmidt, (Mo.) 156 S. W. (2) 919; Sutorius v. Mayor, 350 Mo. 1235, 171 S. W. (2) 69. It necessarily follows that the trial court correctly and properly defined the interests and obligations of the parties (Jelly v. Lamar, 242 Mo. 44, 145 S. W. 799; Shanklin v. Ward, 291 Mo. 1, 236 S. W. 64) and the meritorious question is whether the Holders are entitled, by reason of Mr. Farmer's satisfying the $4,500.00 note and deed of trust executed by Mr. and Mrs. Hendrix, to be substituted or subrogated to any right or interest he may have acquired by reason of the payment. Krebs v. Bezler, 338 Mo. 365, 89 S. W. (2) 935, 103 A. L. R. 1177; annotation 99 A. S. R. 474.

When Mr. Farmer purchased the land from Mr. and Mrs. Hendrix in 1924 it was stipulated in his warranty deed that he assumed and agreed to pay the existing note and deed of trust. And it is true, as a general rule, that the purchaser of real estate who assumes and agrees to pay, as a part of the purchase price, an encum-

brance upon the land becomes primarily liable for the debt and, upon satisfying it, is not entitled to subrogation as against other liens. 50 Am. Jur., Sec. 80, p. 732; Nelson v. Brown, 140 Mo. 580, 41 S. W. 960; Jacobsmeyer v. Jacobsmeyer, 88 Mo. App. 102. But the rule is not inexorable; it has its exceptions. For example, when a grantee assumes and pays an encumbrance without knowledge of the grantor's wife's right to dower he is, nevertheless, entitled to subrogation. Annotation 99 A. S. R., l. c. 526. In Jelly v. Lamar, 242 Mo. 44, 145 S. W. 799, a subsequent purchaser's title failed because his grantor from a voluntary or "domestic partition" acquired an estate by curtesy only. It was argued in that case that the grantee got the title his vendor had and, in addition, it was specifically argued that the vendor has assumed and agreed to discharge an existing note and deed of trust by executing a new note and mortgage and therefore the right to subrogation was extinguished. But the court, nevertheless, held that it would be inequitable to permit the remaindermen to take full title and not make restitution for the payment of the encumbrance. In the Jacobsmeyer case the subsequent grantee had notice, by the record, that the land was subject to an existing contract and claim for the original grantor's support from his sons and so neither the purchaser who assumed the note and deed of trust nor his subsequent grantee were entitled to subrogation. ▮ In that case the contract for support was a preceding charge or lien upon the land. In this case there are no. liens or encumbrances, either prior or subsequent, to the note and deed of trust, other than the obligation created by the Holders in 1944. In this case there are no intervening rights of third persons other than Mrs. Tucker's subsequently created rights as a remainderman. The Holders are chargeable, as we have said, by the record with that interest. But in this case the note and deed of trust under which subrogation is claimed antedated Mrs. Tucker's "fee tail" deed by almost two years and she, likewise, is charged with whatever notice that fact imparts. She is also charged with notice of the two warranty deeds executed by her father and mother, with their covenants of seizen "in fee in the premises." And while we have held that Mr. Farmer and the Holders were chargeable with notice of the record title it would certainly be unrealistic to suppose, in view of the warranty deeds and deeds of trust, that Mr. Farmer in 1923 knowingly paid $11,700.00 for a life estate or that Mr. and Mrs. Hendrix in turn paid $9,800.00 for an estate to be measured by their own lives or that the Holders paid $2,000.00 for a mere life estate in an exhausted Ray County farm in 1942.

But subrogation does not depend upon the validity of the title of the person claiming to be reimbursed—in almost every instance his title fails for one reason or another—but upon his good faith payment and discharge of an obligation upon the land to protect an

interest which he believed himself to have in the property. Sheldon, Subrogation, Sec. 36a, p. 58. Here the note and deed of trust were valid preexisting charges upon the land and the estate of the Hendrix remaindermen, and particularly Mrs. Tucker's remainder interest, were benefited, in fact saved and perpetuated, by Mr. Farmer's payment and satisfaction of the note and deed of trust. Annotations: 87 A. L. R. 220; 29 L. R. A. (N. S.) 153. In this latter respect the case is unlike McDonald v. Quick, 139 Mo. 484, 41 S. W. 208, for in that case the satisfied debt was the individual and personal obligation of the husband and, in one sense, was not a charge upon the land itself. In any event, the life tenant in that case was not dead and the court therefore did not finally determine the rights of the parties. In Cornwell v. Orton, 126 Mo. 355, 27 S. W. 536, the grantees did not claim under a grantor who had paid the mortgage and hence had no claim to subrogation. In Kleimann v. Gieselmann, 114 Mo. 437, 21 S. W. 796, the debt was paid under a mistake of law by a volunteer and so there was no right to subrogation.

In Valle's Heirs v. Fleming's Heirs, 29 Mo. 152, purchasers at a void administrator's sale satisfied an existing mortgage and one of them, who was a grantee from his co-purchasers, and his heirs were subrogated to the rights of the mortgagee as against the owners. Likewise in Maupin v. Longacre, 315 Mo. 872, 288 S. W. 54, a subsequent grantee from one who discharged a mortgage under a void sale was subrogated to the rights of the mortgagee. As to the subsequent grantee's acquisition of the right the court said: *"The equitable interest accruing to Mrs. Welborn through subrogation thereafter passed by mesne conveyances to the defendant* Longacre, and is now owned by him * * * ." In Shanklin v. Ward, 291 Mo. 1, 236 S. W. 64, it was held that the grantee of a purchaser at a void guardian's sale acquired the purchaser's equitable interest arising out of his right to subrogation. See also 60 C. J., Secs. 99, 104, pp. 789, 791. Mrs. Tucker argues, however, that in all these cases the sales were void and that the purchasers who discharged the mortgages got no title whatever while Mr. Farmer and the Holders, in this case, did get the title their respective grantors had, a life estate. It is true that their title was not void, they did acquire some interest through their conveyances—the life estate of their original grantor. But not only does subrogation not depend upon the validity of the grantee's title, which in spite of the warranty deeds in this case eventually failed, it is the device of equity to prevent unjust enrichment and to compel the ultimate discharge of an obligation by him who in good conscience ought to ▇▇ pay it. 50 Am. Jur., Secs. 2, 7, pp. 679, 685; annotation 99 A. S. R., l. c. 476. To summarize—when all the circumstances are considered and the resulting equities favorable to the Holders' claim are weighed and contrasted with the equities favorable to Mrs. Tucker's claim it is justly apparent that subrogation should

be enforced, not to the full extent of the $4,500.00 note and mortgage but proportionately in the precise sum the Holders have paid, their purchase price of $2,000.00. Valle's Heirs v. Fleming's Heirs, supra; Jelly v. Lamar, supra; Shanklin v. Ward, supra; Maupin v. Longacre, supra; Rains v. Moulder, 338 Mo. 275, 90 S. W. (2) 81.

In so far as the judgment fails to enforce subrogation in the sum of $1,500.00, Mrs. Tucker's three-fourths interest, it is reversed and the cause is remanded, otherwise the judgment is affirmed. *Westhues* and *Bohling, CC.,* concur.

PER CURIAM:—The foregoing opinion by Barrett, C., is adopted as the opinion of the court. All the judges concur.