

# In the Missouri Court of Appeals
# Eastern District

<u>DIVISION TWO</u>

| | | |
|---|---|---|
| MICHAEL MEGOWN, ET AL., | ) | No. ED111805 |
| | ) | |
| Appellants, | ) | Appeal from the Circuit Court |
| | ) | of St. Louis County |
| v. | ) | Cause No. 17SL-CC01315 |
| | ) | |
| AUTO CLUB FAMILY INS. CO., | ) | Honorable Stanley J. Wallach |
| | ) | |
| Respondent. | ) | Filed: February 20, 2024 |

**Introduction**

Appellants Michael and Jane Megown ("Megowns") appeal the trial court's decision allocating money to Respondent Auto Club Family Insurance Company ("Auto Club"), as subrogee-insurer of the Megowns, from the Megowns' settlement with dismissed third-party tortfeasor Tyberius Enterprises, LLC d/b/a Craig Electric. In their single point on appeal, the Megowns argue that the trial court erred in allocating any settlement money to Auto Club because subrogation of personal injury claims, as a matter of policy, is prohibited, and their case against Craig Electric alleged, in part, personal injuries. We affirm the judgment of the trial court.

**Background**

The facts of the case are not in dispute. On February 8, 2016, a fire occurred in the basement of the Megowns' home. Auto Club, as property insurer for the Megowns, paid them $722,433.56

for the property damage their home sustained in the fire. The insurance policy provided that, "[w]hen we pay, any rights of recovery from someone else become ours up to the amount we have paid."

Subsequently, the Megowns filed the underlying suit against Auto Club, as insurer, for breach of contract and vexatious refusal to pay. The Megowns amended their petition to add Craig Electric as a defendant, alleging negligence for directly causing or contributing to the fire and pleading property damage and personal injuries. Pursuant to Rule 52.12,[1] Auto Club moved to intervene in their capacity as subrogee of the Megowns to protect their contractual and equitable right of subrogation to the extent of the sum paid to the Megowns, should the Megowns prevail in their suit against Craig Electric. The Megowns did not object to Auto Club's motion to intervene as subrogee, and the court granted it.

Prior to trial, on February 10, 2020, the court approved a joint settlement between the Megowns and Auto Club with Craig Electric for $1,000,000. The trial court's approval was memorialized in its Order and Judgment subject to the parties agreeing to a damages allocation by consent, or "such allocation of the settlement monies [would] be tried by the Court without the further involvement of Tyberius Enterprises, LLC d/b/a Craig Electric," at a later date. The parties then jointly dismissed Craig Electric.

On July 27, 2020, the Megowns filed a motion to disburse proceeds, recognizing Auto Club's position as subrogee and asking the court to permit the disbursement of the $277,566.44 settlement proceeds in excess of the $722,433.56 paid to the Megowns. The court did not specifically rule on the motion; rather, it saved the issue for trial.

---

[1] All Rule references are to the Missouri Supreme Court Rules (2023), unless otherwise indicated.

On July 29, 2021, the court held a bench trial to determine the allocation of the $1,000,000 settlement as between the Megowns and Auto Club. The court heard expert medical testimony from both parties regarding injuries allegedly sustained by the Megowns and, on October 26, 2021, issued an order apportioning $722,433.56 to Auto Club and $277,566.44 to the Megowns.

From March 6 to March 10, 2023, the Megowns tried before a jury their claim that Auto Club had breached the insurance contract by insufficiently compensating them for the property damage to their house.[2] The jury returned a verdict in favor of Auto Club, awarding the Megowns no additional damages. Subsequently, the Megowns filed a motion for additur, to amend the judgment, and for a new trial. Therein, the Megowns alleged several errors, although none of which referenced the alleged error now before this Court: that the trial court erred by permitting Auto Club to subrogate its property damage payment from the $1,000,000 settlement with Craig Electric, because that settlement resulted from a cause of action in which the Megowns, in addition to property damage, alleged personal injuries.[3] The trial court denied the motion. The Megowns appeal.

## Standard of Review

"This Court applies de novo review to questions of law decided in court-tried cases." *Pearson v. Koster*, 367 S.W.3d 36, 43 (Mo. banc 2012). With respect to such questions, "the appellate court reviews the trial court's determination independently, without deference to that court's conclusions." *Id.* (citing *Moore v. Bi-State Dev. Agency*, 132 S.W.3d 241, 242 (Mo. banc 2004)).

---

[2] Prior to the trial, the Megowns voluntarily dismissed, without prejudice, their vexatious refusal to pay claim.

[3] Because the Megowns had earlier submitted briefs objecting to the authority of the trial court's damages allocation proceeding on the same grounds as those argued on appeal, the trial court had the opportunity to correct the alleged error while correction was still possible, and the issue was sufficiently preserved for appeal. *See State v. Pierce*, 433 S.W.3d 424, 429 (Mo. banc 2014) (citing *Douglass v. Safire*, 712 S.W.2d 373, 374 (Mo. banc 1986)); *see also* Rule 78.07(b).

**Discussion**

In their sole point on appeal, the Megowns ask this Court to decide whether the trial court had authority to allocate third-party tortfeasor settlement funds to a property damage insurer-subrogee when the settled cause of action alleged personal injuries and property damage. Specifically, the Megowns allege that the trial court erred in allocating settlement funds to Auto Club because public policy prohibits subrogating against any proceeds that are partly a personal injury settlement.

Auto Club cites no case and we found no case that answers the question of whether the coexistence of claims for personal injury and property damage in a cause of action against a tortfeasor, when settled and released without specific allocation, defeats the subrogation right of the property insurer with respect to their interest in the property damage claim.

Subrogation exists to prevent unjust enrichment. *Keisker v. Farmer*, 90 S.W.3d 71, 75 (Mo. banc 2002) (citing *Tucker v. Holder*, 225 S.W.2d 123, 126 (Mo. banc 1949)).

> The firmly established rule in Missouri, although apparently obtaining only in this jurisdiction, is that when an insurer pays a property loss, then its right to maintain suit against the tort-feasor depends upon whether it receives from the insured an assignment of the whole claim as compared with merely rights of subrogation. If the insurer receives such an assignment, then it has the exclusive right to maintain the suit against the tortfeasor for the entire claim including any deductible item. On the other hand, if the insurer's rights are simply those of subrogation, then legal title remains in the insured, and he retains the exclusive right to bring the suit.[4]

*Hagar v. Wright Tire & Appliance, Inc.*, 33 S.W.3d 605, 610 (Mo. App. W.D. 2000) (citing *Farmers Ins. Co., Inc. v. Effertz*, 795 S.W.2d 424, 426 (Mo. App. W.D. 1990)). Thus, in a

---

[4] Here, neither party contends that Auto Club received an assignment of the Megowns' property damage claim; their rights were only those of a subrogee.

subrogation situation, since the insured still holds legal title to the claim, the insurer must wait and assert its subrogation interest against any recovery the insured makes against the tortfeasor. *Id.*

Missouri's public policy, however, generally forbids the assignment or subrogation of personal injury claims to an insurer. *Gilmore v. Attebery*, 899 S.W.2d 164, 166 (Mo. App. W.D. 1995) (citing *Waye v. Bankers Multiple Line Ins. Co.*, 796 S.W.2d 660, 661 (Mo. App. W.D. 1990) and *Travelers Indem. Co. v. Chumbley*, 394 S.W.2d 418, 423 (Mo. App. S.D. 1965)). The purpose of Missouri's non-assignability rule is to protect a person's injuries from becoming a commodity of sale, recognizing that personal injuries "should not be the subject of barter or trade, or a matter of profit to the creditors of the injured party." *Id.* at 168 (citing *Forsthove v. Hardware Dealers Mut. Fire Ins. Co.*, 416 S.W.2d 208, 216 (Mo. App. E.D. 1967)).

While we can find no strictly analogous cases, the procedure followed by the trial court here sufficiently respected the underlying rationale behind Missouri's ban on subrogating personal injury claims while permitting the subrogation of the property damage claim. First, in not disputing the facts, the Megowns concede that Auto Club was reimbursed $722,433.56 from the portion of the settlement fund representing property damages, leaving the personal injury settlement funds untouched. Second, the result of the Megowns' argument would prevent insurers from subrogating from third-party tortfeasors the amounts expended on an insured's property damage claim whenever that insured party even *alleges* personal injuries—along with property damage—in a suit against the tortfeasor. As a practical matter, utilizing the Megowns' approach, an insurer would not be allowed to receive reimbursement for property damage in any case where an insured is able to plead personal injuries and settle without apportionment in advance, even if the insured had contractually agreed to reimbursement.

In so far as the Megowns rely on *Benton House, LLC v. Cook & Younts Ins., Inc.*, 249 S.W.3d 878 (Mo. App. W.D. 2008) *superseded by statute on other grounds*, 5 U.S.C.A. § 8902(m)(1), *as recognized in Nevils v. Group Health Plan, Inc.*, 524 S.W.3d 502 (Mo. banc 2017), to argue that the trial court's actions here permitted an insurer "to subrogate against its own insured," we find that the Megowns' reliance on this case is misplaced given the dissimilarity between the situation in *Benton House* and the case at bar. In *Benton House*, the court found that an insurance company attempted to subrogate against its own insured when the insurance company made a voluntary payment to a tort victim of its insured and then attempted to recoup that payment from its insured. The court therein noted that, "[n]o right of subrogation can arise in favor of an insurer against its own insured, since, by definition, subrogation arises only with respect to rights of the insured against third persons to whom the insurer owes no duty." *Id.* at 882 (quoting *Jos. A. Bank Clothiers, Inc. v. Brodsky*, 950 S.W.2d 297, 303 (Mo. App. E.D. 1997)). Here, the insurer is seeking reimbursement from money paid by their insured's tortfeasor, a third party to whom the insurer owes no duty, rather than from their insured.

In addition to a lack of precedential support, the position advanced by the Megowns finds no support in public policy. The Megowns posit that, "[t]he only way that Auto Club could subrogate this claim is if the two separate actions—the property damage claim and the personal injury claim—were allocated in the settlement." The imprecision of this statement, coupled with the lack of supporting citations and analysis, suggests its practical unworkability. Forcing the parties to allocate the settlement funds between the two claims in advance of a settlement agreement would disincentivize settlement agreements as a whole, requiring the third-party tortfeasor to maintain their involvement in the case beyond their actual interest. *See Travelers Indem. Co. v. Chumbley*, 394 S.W.2d 418, 425 (Mo. App. S.D. 1965) (expressing encouragement

of voluntary settlement with third-party tortfeasors as "policy of the law"). In other words, the third-party tortfeasor that seeks to settle with an insured, lacking an actual interest in how the settlement funds are allocated, would be unable to settle until the insured and the insurer agree on the allocation—assuming they are able to do so at all.[5] Thus, we find that the Megowns' approach would be violative of public policy; in contrast, the trial court's procedure here furthered public policy and incentivized settlement while respecting the ban on subrogation of personal injury claims.

## Conclusion

For the reasons set forth above, the judgment is affirmed.

_____
Renée D. Hardin-Tammons, J.

Kurt S. Odenwald, P.J., and
Michael E. Gardner, J., concur.

---

[5] We note that the allocation hearing likely protected the Megowns' interests above what appears to be required by case law, in permitting them to argue that their personal injuries were extensive enough to diminish the proportion of the settlement reasonably due Auto Club, it being established that Auto Club paid the Megowns $722,433.56. *See Kroeker v. State Farm Mut. Auto. Ins. Co.*, 466 S.W.2d 105, 112 (Mo. App. W.D. 1971) ("…we believe [the trial] court has equitable power to enforce that right [of subrogation] by an appropriate allocation of such judgments between plaintiffs…").